Elisha W. Willard, Relator, *v.* Jesse K. Dubois, Auditor, etc., Respondent.

### APPLICATION FOR A MANDAMUS.

The owner of protested bills, issued under the general banking law, should receive his proportion of the proceeds of the sale of the stocks, to be estimated upon the principal, and damages computed at twelve and one-half per centum on the amount of bills protested, to be calculated from the date of protest.

'The opinion of Mr. Justice Breese gives a full statement of the case.

Blodgett & Winston, for the Relator.

S. T. Logan, for the Auditor.

Breese, J. The following petition to this court having been filed for a mandamus against the auditor of public accounts, the parties agree upon a state of facts on which we are called to decide:

*To the Hon. Judges of the Supreme Court of the State of Illinois:*

Your petitioner, Elisha W. Willard, of the city of Chicago, in the State of Illinois, respectfully represents, that on or about the third day of January, in the year 1861, your petitioner was the holder and owner of bank notes, issued and put in circulation by the Highland Bank—a corporation for banking purposes then existing in said State, under and by virtue of the act of the General Assembly of said State, entitled " An Act to establish a general system of banking," approved February 15, 1861, and the subsequent enactments of said General Assembly amendatory of and supplementary to said act; that on said third day of January, 1861, your petitioner caused the said circulating bank notes so held by him as aforesaid, against said Highland Bank, amounting to the sum of seven thousand two hundred dollars, to be presented to said bank for redemption and payment, and payment and redemption thereof was then and there refused, and said bank

notes were therefore protested for non-payment, pursuant to said laws.

And your petitioner further showeth, that after said protest and in consequence thereof, the auditor of public accounts of said State proceeded in pursuance of the said general banking law, and the amendments thereto, to put said bank in liquidation, and wind up its affairs, and has sold and converted into money the stocks and securities deposited to secure the redemption of the circulating notes of said bank, and now has said funds in hand.

Your petitioner further showeth, that by the provisions of said general banking law and its amendments, said bank, by reason of the aforesaid refusal to pay said notes on presentation, and of the aforesaid protest thereof, became and is liable to pay your petitioner damages in lieu of interest on the amount of said notes, at the rate of twelve and a half per cent. per annum, from the time of said refusal of payment and protest, and that said notes, together with said interest, by way of damages, remain wholly unpaid.

And your petitioner further showeth, that he is advised and charges that said auditor of public accounts ought to pay out of the proceeds of the securities of said bank so in his hands as aforesaid, the said twelve and a half per cent. per annum damages, so due your petitioner as the holder and owner of said sum of seven thousand two hundred dollars of the notes of said bank, protested as aforesaid, and also the *pro rata* proportion or dividend to which your petitioner is entitled as the holder of said notes.

And your petitioner further showeth, that said auditor, notwithstanding the said right of your petitioner to have the said damages paid out of the proceeds of said securities in his hands as aforesaid, refuses to pay the same to your petitioner.

Wherefore, your petitioner prays that a writ of mandamus be issued out of your honorable court, commanding said auditor to pay said damages out of the proceeds of the securities of said bank, in his hands for distribution among the billholders of said bank.

And your petitioner will ever pray, etc.

The following is the statement of facts as agreed upon :

It is hereby stipulated and agreed between the parties, that the above case shall be submitted to said court at its next term, to be holden in Ottawa, upon the following facts, viz. :

On and before the 3rd day of January, 1861, the Highland Bank was duly organized and doing business in said State under the provisions of the general banking law of 1851, and its amendments ; that said bank had deposited securities with the auditor, and issued and put in circulation bank notes pursuant to said law and its amendments ; that on the 3rd day of January, 1861, said Elisha W. Willard, as the holder and owner of the sum of seven thousand two hundred dollars of the circulating notes issued by said bank, and the payment and redemption whereof was secured by the deposit of said securities with the auditor, caused the said notes so held by him to be presented to said bank for redemption and payment ; that said redemption and payment was refused by said bank, and said notes duly protested for non-payment, and thereupon said Willard filed said notes and protest with the auditor, pursuant to law, and the auditor proceeded to put said bank in liquidation and wind up its affairs as required by law ; that said bank thereupon filed a bill in chancery, in the Sangamon Circuit Court against the auditor, alleging irregularity and illegality in said presentation and protest, and obtained an injunction upon his proceedings for winding up said bank ; that the auditor answered said bill, and at the first term of said court, held after the issuing of said injunction, the same was dissolved and said bill dismissed ; that the said Willard and J. M. Adsit, another holder of notes of said bank, also protested for non-payment on the 3rd day of January, paid in part the expenses of employing solicitors and defending said suit ; that on the dismissal of said bill, the auditor proceeded to put said bank in liquidation, to obtain the orders necessary and sell the public stocks deposited to secure the payment and redemption of the circulating notes of said bank ; that the circulation of said bank at the time when the auditor was ready to declare a dividend to the bill-holders, amounted to the sum of sixty-

three thousand eight hundred dollars, and the net proceeds of the sale of said public stocks for the redemption of said circulation, amounted to the sum of fifty-five thousand six hundred and seventy dollars and twenty-two cents.

Willard claims that the auditor, in making a dividend to him upon the said sum of seven thousand two hundred dollars of the protested notes of said bank, should add to the sum of said protested notes, and also to all other notes of said bank duly protested for non-payment and filed, interest at the rate of twelve and a half per cent. per annum, from the date of said protest to the time when the auditor was ready to make said dividend; that he, Willard, shall receive his dividend upon said protested notes on the basis of the amount thereof, with said twelve and a half per cent. per annum added; the said twelve and a half per cent. per annum interest so claimed being that allowed in lieu of all damages by the eighteenth section of the general banking law.

If the court, on hearing said case, shall be of opinion that said twelve and a half per cent. damages or interest should be paid *pro rata* with the non-protested bills of said bank, out of the proceeds of said public stocks in the hands of the auditor, then a peremptory mandamus shall issue, directing the auditor to proceed upon said basis in making his dividend of the proceeds of said securities in his hands, without fixing amounts or sums ; and if the court shall be of opinion otherwise, then the order or judgment shall set forth in general terms the basis upon which said dividend shall be declared, on said statement of facts, and the law applicable to the case. The auditor insists that although the law allows damages at twelve and a half per cent. against the bank, yet it does not authorize those damages to be paid *pro rata* with the bills of the bank out of the proceeds of the securities filed.

To understand this case, reference must be had to the banking law of 1851, and the amendatory law of 1857. Section 18, of the original banking law, provides that " every association under the provisions of this act shall be liable to pay the holder of every bill or note put in circulation as money, the

payment of which shall have been demanded and refused, damages for the non-payment thereof, in lieu of interest, at the rate of twelve and one-half per cent. per annum, from the time of such refusal until the payment of such evidence of debt and the damage thereon." (Scates' Comp. 114.)

Section 26, of the same act, provides that the auditor shall give notice "that all the circulation issued by such person or association, will be redeemed out of the trust funds belonging to the maker or makers of such protested note, to the payment, *pro rata*, of all such circulating notes, whether protested or not." (Id. 116.)

Section 3, of the amendatory act of 1857, provides, that "if the said bank, issuing said bills or notes, shall neglect to pay the same, with twelve per cent. interest per annum thereon, from the date of such protest, together with all costs and protest fees and expenses, then, after the expiration of ten days, as herein provided, the auditor shall proceed as provided in the fourteenth and twenty sixth sections of the act to which this is an amendment." (Id. 128.)

This is all the legislation having a direct bearing on the question presented, and that is, whether the interest or the damages allowed in lieu of interest upon the bills protested, are part of the bills themselves, or of the amount due upon them.

This court has said, in *McConnell* v. *Thomas*, 2 Scam. 313, that the interest on a note is regarded as an incident to the debt, and is given in the form of damages without being specially declared for.

In the case of the *Succession of Andreas Anderson*, 12 Louisiana Ann. R. 95, the court held, that interest could not be recovered distinctly from the principal, the law making no distinction between interest claimed as damages, as in the present case, and interest as in other cases. Without section 18, interest at the legal rate, we apprehend, could be recovered upon bank notes payable on demand, after demand is made for the payment. All contracts to pay money undoubtedly give a right to interest from the time when the principal ought to be paid, but it cannot be sued for apart from the

principal sum.   Banks and bank notes have no immunities not accorded to the citizen, and suits against them on their notes are of common occurrence.   Section 18 expressly gives damages, at the rate of twelve and one-half per cent., in lieu of legal interest.

As argued by the counsel for the relator, there can be no injustice in giving to the diligent creditor, who presents his bills for payment and causes them to be protested for non-payment, his full share of the stocks sold in proportion to the amount due on his protested bills.   His right to damages in lieu of interest upon the protested bills, is as perfectly vested as the right of any bill-holder to the bills themselves; and it is no more unjust to compel a bill-holder, in case of a deficit in the proceeds of the stocks deposited, to resort to the liability of the stockholders of the bank for his proportion of such deficit, than it would be to compel the vigilant holder of protested bills to seek from the stockholders alone the interest or damages in lieu thereof, which has accrued to him upon his bills protested, as the reward of his diligence.

Section 26 provides expressly, that the auditor shall pay, *pro rata*, all the circulating notes of the bank, whether protested or not, out of the trust funds belonging to the bank; in other words, out of the proceeds of the sale of the pledged stocks.   The sum due upon the protested notes is the principal and interest, or the twelve and one-half per cent. damages in lieu thereof, and we do not see how the payment could be *pro rata*, unless the damages are included in the calculation. They are as much principal as the notes themselves.

By the provisions of the general banking law, when notes are protested and the auditor notified thereof, the holder of the notes cannot use them for any purpose, he has to deposit them with the auditor, who retains them until the stocks are sold, and the bank put in liquidation.   Other bill-holders are not thus deprived of the use of the notes, and since, under the law, every bill-holder has the right to present the bills he may have, and have them protested for non-payment, the one who incurs the trouble and expense of the protest, and the consequent winding up of the bank, strong reason is perceived why

he should have some preference over the sluggish, and should receive his proportion of the proceeds of the sale of the stocks, to be estimated upon the principal and damages, computed at twelve and one-half per cent. on the amount of notes protested, to be calculated from the date of protest, and that a peremptory writ of mandamus issue.

*Peremptory mandamus awarded.*