## JONES vs. DOW and others.

In a foreclosure sale under a mortgage which covered the mortgagor's homestead and other lands, the sheriff, contrary to the mortgagor's request, neglected to offer first the other land, and sold the homestead alone for the amount of the judgment. *Held*, that however just it might generally be, in such a case, for the court to require a sale of the other land first, yet it appearing here that there were creditors of the mortgagor (not parties to the suit) who had a lien upon such land, and none upon the homestead, it was not an abuse of discretion for the court to confirm the sale.

APPEAL from the Circuit Court for *Walworth* County.

Foreclosure of a mortgage, executed in 1856. The mortgaged premises consisted of two parcels of land in the village of Whitewater, one of them a business lot and the other a lot occupied by the mortgagor, *Dow*, as his homestead. Before the sale, the defendant *Dow* served upon the sheriff a written demand that he offer for sale first the business lot, on the ground that he claimed the other as his homestead. The homestead was bid off at the sale, to the plaintiff, for $1779.12, the amount of the judgment and costs of sale, and the business lot was not sold. A motion to confirm the sale was resisted by *Dow* upon his own affidavit and that of his attorney. *Dow's* affidavit stated in substance, that the lot which had been sold consisted of a quarter of an acre of land within the limits of said village of Whitewater; that affiant was a married man, and had occupied said lot as a homestead since December, 1856, and still occupied it for that purpose; and that it was worth $2500; that the other business lot was worth at least $1200, and affiant owned no other land; that he desired to sell the business lot first so that he might redeem the homestead; that on the day of sale, one L. C. Hall, who was present at the sale, had the money and stood ready to bid $1200 for said business lot, in case the same had been offered for sale by the sheriff; that the sheriff commenced the proceedings at the sale by first reading the notice of sale, and before he offered or called for a bid upon any portion of said premises, the plaintiff bid the full

amount of said judgment and costs upon the homestead ; that affiant's attorney requested the sheriff to disregard said bid and offer for sale the other lot, in accordance with affiant's previous written demand ; but the sheriff refused compliance with said demand, and struck the homestead off to the plaintiff. The affidavit further stated that in case a new sale were had, certain persons therein named would bid for said business lot the full amount of the judgment, &c. The affidavit of defendant's at-torney stated substantially the same facts as to the proceedings at the sale. The plaintiff read, in support of his motion, affi-davits of F. B. Hall and others. Hall's affidavit states, among other things, that the lot sold comprises three quarters of an acre of land, and that the homestead of the defendant *Dow* "has never been set off to him as required by law ;" that on the 30th of January, 1858, certain persons recovered a judg-ment in the circuit court of said county against the defendant *Dow* and one Clapp, for $162.14, which was on the same day duly docketed in the office of the clerk of said court, and im-mediately became a lien on all the real estate of said *Dow* in that county, and still remains a lien thereupon subject to said mortgage ; that *Dow* did not occupy the lot in question, as a homestead or otherwise, on said 30th of January, nor did he then own any land on which said judgment was a lien except the two pieces covered by this mortgage ; that on the 5th of February, 1862, affiant purchased said judgment, and took an assignment of the same, which was duly docketed &c. ; that there was due and unpaid at the time of said assignment, and still remains due and unpaid on said judgment, the sum of $93.92, with interest from January 30th, 1858 ; that on the 7th of September, 1858, said *Dow* leased to the affiant the lot of land above described as a "business lot" and covered by said mortgage, for five and one-twelfth years from October 1, 1858, at an annual rent of $100 ; that affiant entered upon said lot under the lease, and built a store and made permanent improve-ments thereon, to the value of $600, and remained in posses-

sion under the lease and paying rent until October 29th, 1861, since which time he has been in possession by virtue of the authority hereinafter stated; that on the 18th of November, 1858, one Partridge recovered a judgment in said circuit court against *Dow* for $246.65, which judgment was on that day duly docketed, &c., and became a lien upon all the land of said *Dow* in that county except his homestead; that on the 28th of June, 1859, said last described lot was sold on execution under said judgment, to Partridge, the judgment creditor, for $287.50, the amount required to satisfy the judgment; that on the 29th of October, 1861, said lot (not having been redeemed from said sale) was conveyed by Partridge to the affiant and one Bartholomew, in whom the title to the same continued to be vested, subject to said mortgage and the money judgment first above described; and that since the date last mentioned he has occupied said lot under the title thus acquired by himself and Bartholomew. The affidavit further states that Clapp and *Dow* have no other property liable to execution out of which the first mentioned judgment could be collected, and that if *Dow's* request be granted by the court, to have said lot sold first under the judgment of foreclosure, affiant will lose his rights by virtue of the lease, his right to remove said store from the lot, and the consideration paid by him for the first mentioned judgment; and that he and Bartholomew will lose their title to said lot, acquired from Partridge. It further states that the value of said lot (exclusive of the building, which belongs to affiant) is not more than $800; and that the value of the other lot, the sale of which was sought to be confirmed, is not more than $1400. It appears from the indenture of lease between *Dow* and said Hall, attached to the affidavit, that Hall was to have the privilege of removing from the premises, at the end of the term, any buildings or other improvements erected by him thereon. The contents of the other affidavits in support of the motion to confirm, need not be stated here. The court made an order confirming the sale; and *Dow* appealed.

*Edson Kellogg*, for appellant.
*N. S. Murphy*, for respondent.

*By the Court*, DIXON, C. J.    However just and reasonable it might be for the court to compel a sale of the business lot first, and thus save the homestead, if that were the only question, yet we think *Dow's* equity to hold his homestead fully countervailed by the equities of his creditors, who must look to the business lot for their satisfaction, and who have no lien upon the homestead.    Until the legislature shall have declared the obligation to preserve the homestead superior to that of paying one's honest debts, we must hold the equity of the creditor at least equal to that of the debtor in cases like this.    The application to open the sale, and for a sale of the business lot first, being addressed to the sound discretion of the court, that discretion was properly exercised in refusing the order and permitting the sale already made to stand.

Order affirmed.