SAUTBRINK v. The PLYMOUTH ROCK. See Cases Nos. 11,235–11,237.

## Case No. 12,379.

### In re SAUTHOFF et al.

[7 Biss. 167; 14 N. B. R. 364; 5 Am. Law Rec. 173; 8 Chi. Leg. News, 370; 3 Cent. Law J. 544; 3 N. Y. Wkly. Dig. 96.] [2]

District Court, W. D. Wisconsin. Aug. 4, 1876.

#### BANKRUPTCY — MARSHALING ASSETS — MORTGAGE LOANED TO BANKRUPT—POLICY PAYABLE TO WIFE—HOMESTEAD.

1. A creditor who held several judgment notes against a person afterwards declared bankrupt, and also mortgages and two insurance policies as collateral security, a few days before the filing of the petition in bankruptcy, caused judgment to be entered upon the notes, and executions to be issued thereon. *Held*, that the court had no power to so marshal the assets as to require such creditor to foreclose a mortgage before resorting to the general fund.

2. This rule would not extend to a mortgage loaned by a third party to the bankrupt, to be used as a security for the payment of the judgment notes. The rights of the assignor of such a mortgage would be superior to those of the assignee in bankruptcy.

3. The same principle applies to the case of a policy payable to the wife. She is to be regarded as a security to that extent, and entitled to protection in preference to the assignee. But the mortgage of the bankrupt and wife, to the petitioner, and the policy of insurance payable to the bankrupt in this case, fall within the general doctrine of marshalling securities, and the petition to that extent is to be regarded as doubly secured, and should be required to first exhaust his remedy on them, and be allowed the balance out of the general fund in court.

4. The fact that a part of the property is a homestead does not change the rule requiring a party having security on two funds, to first exhaust his remedy upon the fund he alone was secured upon, where there is another party having security on the other alone.

In bankruptcy. Application by John J. Suhr for an order directing payment of three judgments in his favor against the bankrupts [Sauthoff and Olson], entered on the 3d day of April, 1876, upon their promissory notes, by virtue of separate warrants of attorney attached to each. The judgments in the aggregate amount to about $3,000. No question is raised as to the validity of the judgments, the facts as admitted being that the notes were discounted in the usual course of business by petitioner, who is a banker, and that the warrants to confess judgment were attached to and accompanied by the notes, and were given more than two months before the petition against the bankrupts was filed. There is no charge that the bankrupts in any way procured the entry of judgments except by giving the warrants of attorney to confess. On the day the judgments were entered, executions were issued on each, and a sufficient portion of the bankrupts' stock in trade was seized to satisfy them. The other creditors instituted proceedings in bankruptcy, on the 6th of April, and, after an assignee was appointed, the parties agreed that the goods might be sold by the assignee and the proceeds be kept separate and deposited in the registry of this court, and that the lien of executions should be transferred to the fund in court with the same force as it existed on the goods by virtue of the levy. The petition further shows that, as collateral security to the debt of the petitioner, the bankrupt, Sauthoff, assigned to him a policy of insurance upon the life of his wife, payable to him, and that he and his wife assigned another policy upon his life, payable to his wife, and that the bankrupt procured his brother, Wm. Sauthoff, to assign as further collateral security, a note and mortgage, belonging to him, upon the homestead of the bankrupt, upon which there was due one thousand dollars, and that the bankrupt and his wife gave as further collateral security another mortgage upon the homestead of $1,000, all which were duly transferred to and held by the petitioner as collateral security for his debt against the bankrupts.

Sloan, Stevens & Morris, for John J. Suhr. H. M. Lewis, for assignee.

HOPKINS, District Judge. By means of these securities and of the judgments which he took, the petitioner had ample security, and will get his pay in full, while the other creditors will not get to exceed one-half of theirs.

The assignee has sold the property for

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 3 N. Y. Wkly. Dig. 96, contains only a partial report.]

enough to pay all of the judgments out of which petitioner makes this application for payment.

The assignee opposes the application, and insists that the petitioner should be required, first, to exhaust the other security that he has, and only receive out of the fund in court the amount that may remain after applying the avails of the other securities. He insists upon the application of what he claims to be the rule in equity, that as the petitioner has security upon two funds for his debt, while the general creditors, represented by the assignee, have security on but one, he should be required to resort first to his security upon which the other creditors have no lien.

The general rule in equity is, that where there are several creditors having a common debtor, who has several funds, all of which can be reached by one creditor, and only a part by the others, the former shall take pay out of the fund to which he can resort exclusively, so that all may be paid. This principle enforces the right of the creditor having a lien upon all the funds to be paid in full, but it requires him to obtain it out of such portions of the funds as will cause the least inconvenience and injury to the creditors whose liens are confined to one fund. In this way no wrong is done to the one who has all the funds within his reach. His lien is not impaired as to either fund. The authority of the courts over him only extends to directing him which he shall first appropriate to his claim, restraining him, during such reasonable time as may be necessary to successfully make such application, from proceeding to appropriate the other; keeping the other sacred, however, in the mean time, to make up any deficiency. The common debtor can not complain of this rule, for he is benefited by having a larger portion of his debts paid by pursuing this course than if all the funds were needlessly exhausted by a single creditor.

But it is uniformly held that courts should not exercise this power to the material injury or prejudice of the creditor holding both funds. But this restriction does not extend so far, as was contended by petitioner's counsel, as to deprive the court of the exercise of the power in all cases where the creditor may be somewhat delayed in his remedies, or where the time of obtaining payment may be somewhat postponed. If it did, it would defeat the operation of the rule in most cases, for in almost every conceivable case, some time would be necessarily required in converting a security of any kind into money, and a delay of some extent is therefore inevitable in the practical application of the doctrine of marshalling securities. But a mere delay or postponing of payment is not regarded in such cases as a material injury, for the interest on the claim is deemed an adequate compensation to the party for such delay. Interest is deemed a sufficient compensation for the delay of payment, which is incident to all judicial proceedings.

The remedy to render available the security should also be certain and direct, before a party should be required to adopt it, and defer other remedies that he is entitled to, in order to obtain satisfaction of his debt.

In this case the remedy of the petitioner is quite simple. An action to foreclose a mortgage and sell the property is not a difficult or uncertain remedy, and a party could hardly maintain the position that a security so easily converted into money as a mortgage, and by so expeditious a method as exists in this state, was a doubtful remedy, or would unreasonably delay him or materially injure or prejudice his rights. Courts of equity exercise this power in such cases—not as an independent equity that exists against the creditor; for, as the writers on this subject say, no equity can be created against the creditor holding the double fund security by a party who has an imperfect security. But they say it is an equity against the debtor, for to allow the doubly secured creditor to take the doubly charged estate, would enable the debtor to get back the singly secured estate discharged of both debts.

This would be literally true in this case, for when the special sureties are released from the petitioner's claim, they will all go back to the debtor, and they cannot be reached by the assignee in his hands. So that the right sought to be enforced is rather an incident to the equity against the common debtor, and is free, if judicially applied, from all objection or charge of injustice. Adams, Eq. 272; Will. Eq. Jur. 337, Story, Eq. Jur. § 634 et seq. This doctrine is analogous to that which gives a surety the right to compel the creditor to exhaust this remedy against the principal's property before resorting to him. Now what application is to be made of this doctrine in this case?

First: Is the mortgage assigned by William Sauthoff to the petitioner such a security that the assignee can require the petitioner to apply it upon his debts before using the general fund? I think not. That transaction was, in effect, but a loan of this mortgage to the bankrupt for that purpose, and that William occupies the position of a surety to that extent, and as such his rights are equal, if not superior, to the rights of the assignee, and if his rights are equal, the claim of the assignee is defeated. But I think they are paramount, and that he has a right to require that the petitioner first exhaust all property of the bankrupts upon which he has a claim to secure the same debts, and the rights of the assignee, as to this mortgage, are subordinate to his.

The same principle applies in the case of the policy payable to the wife. She is to be regarded as a security to that extent, and entitled to protection in preference to the assignee as the representative of the general creditors. But the mortgage of the bankrupt Sauthoff and wife to the petitioner, and the policy of insurance payable to the bankrupt.

fall within the general doctrine above stated on the subject of marshalling securities, and the petitioner to that extent is to be regarded as doubly secured, and should be required to first exhaust his remedy on them, and be allowed out of the general fund in court, the balance remaining after applying the proceeds of those securities upon his debts.

The petitioner's counsel contended for the right to take the whole pay out of the general fund, and to leave the assignee to his rights of subrogation. But I do not deem that just in this case. The estate should not be burdened with litigation which would involve new and intricate questions, that would not arise in suits prosecuted by the petitioner. I can see no hardship in requiring him to collect those claims himself.

The petitioner's counsel also claims that as this mortgage was on the bankrupt's homestead, which was not liable for his debts in this state, and could only be incumbered or conveyed by the wife's joining her husband in a conveyance of it, that it should be considered in the nature of a security furnished by the parties, the wife particularly, that was equally entitled to protection as the securities I have before referred to. He cited and relied principally upon the case of Dickson v. Chorn, 6 Iowa, 19, as sustaining his position. In regard to that case, it is only necessary to remark that it was decided mainly upon the statute of that state, and therefore can not be regarded as an authority where the statute does not exist. In that case the creditor had a mortgage on the insolvent's homestead, which he cancelled voluntarily and sought full payment of the debt originally secured by the mortgage out of the general assets. The court ruled that as the statute required a creditor secured by a mortgage on a homestead to exhaust his remedy against the other property of the mortgagor before selling the homestead, the creditor had a right and it was his duty to collect his pay out of the general assets, if he could, before he could resort to his mortgage. This case, therefore, when properly understood, does not contravene the general equity doctrine hereinbefore laid down.

The supreme court of this state has, in two cases, considered the question substantially involved here.—First, in Jones v. Dow, 18 Wis. 241; and again in White v. Polleys, 20 Wis. 503; and they do not recognize any such right in a mortgagor of a homestead in this state, as is contended for in this matter by petitioner's counsel. In the case of Jones v. Dow, supra, the mortgage covered the homestead and a business block, and the mortgagor insisted that the business block should be sold first. But the court, it appearing that there were judgment creditors who had a lien upon the block and not upon the homestead, denied his claim, and the chief justice in delivering the opinion of the court, says: "Until the legislature shall declare the obligation to preserve the homestead superior to that of paying one's honest debts, we must hold the equity of the

creditor at least equal to that of the debtor in cases like this." And, in the other case, the question arose between a mortgagor, whose mortgage covered his homestead and other property, and a judgment creditor having a lien upon the other property only, and the court there held that the debtor had no right to have the property not included in homestead first exhausted, in order to preserve to him the homestead; that a part of the property being a homestead did not change the equity rule that required a party having security on two funds to first exhaust his remedy upon the fund he was alone secured upon, where there was another party having security on the other. I fully concur in these views, and shall follow the doctrine of those cases in my disposition of this question.

The legislature has, since that decision, in suits to foreclose mortgages covering the mortgagor's homestead and other property, required the sale of the property not included in homestead first. But this is not such a suit, and the statute in terms, does not include a proceeding of this nature, or suits in equity for the marshalling of assets, and as it is in derogation of a long established principle of equity jurisprudence, I do not feel at liberty to extend its operation by construction beyond its plain reading.

I shall, therefore, order petitioner to collect and to exhaust his remedy upon the mortgage of F. Sauthoff and wife, and the policy of insurance payable to the bankrupt, and to apply the avails upon his claim, and that he be paid from the general fund only what shall remain after such application. But as it is apparent that enough will not be realized therefrom to pay it in full, I shall order that he be paid now $2,000 to apply thereon, retaining enough to meet any balance, if there should be any. Perhaps the assignee and petitioner may be able to agree upon a valuation of these securities and upon a sum at which the petitioner will be willing to take them, in which case, if approved by the court, the matter may be at once closed.

The clerk will enter an order in accordance with the terms of this opinion.

[For subsequent proceedings in this litigation, see Case No. 12,380.]