JOHN PLAIN

*v.*

·HENRY ROTH *et al.*

*Filed at Ottawa November 20, 1883.*

1. APPLICATION OF PAYMENTS—*when creditor may apply on unsecured debt.* Where a creditor holds notes of his debtor, some of which are secured by mortgage, and others, and a judgment, are unsecured, and rents due his debtor are, by the direction of the latter, paid to the creditor, the latter will have the right to apply such payments on the unsecured notes or indebtedness, and if he does not so apply them the law will make the application that way, unless the debtor directs otherwise.

2. SAME—*what is a direction as to application.* Where a debtor, in his lease of property, specifies therein that the rent shall be payable to his creditor ("who holds a mortgage") so long as the tenant occupies the premises, "or until the mortgage is paid off," etc., this will be evidence tending to show the purpose of the debtor that the rents should apply on the mortgage indebtedness, instead of other unsecured indebtedness.

3. MARSHALING ASSETS—*rule applies only between different creditors.* The rule as to compelling a mortgagee or creditor having a lien on two funds to satisfy his claim out of one of them, to the exclusion of the other, has no application between debtor and creditor. · It applies only as between different creditors.

4. The fact that a mortgage covers a homestead, and also other property which is subject to a subsequent judgment lien, gives the debtor no right to

have the latter property applied first to the payment of the mortgage debt, so that he may save his homestead.

5.  Where a creditor has a mortgage covering only a store lot, and another on the store property and the homestead of the debtor, in which there is a waiver of the homestead, and he has also a judgment which is junior to that of a third person, it is to the interest of such creditor to have the homestead property first sold, so that there will be more left out of which to make his judgment, and he should be left to have the sale made in the order he chooses.

6.  WITNESS—*competency of one interested, as against heir defending.* Where a mortgagee assigns the note and mortgage of his deceased debtor to another without recourse, who files his bill against the heir and others to foreclose, and it is set up in defence that the mortgagee had received rents and payments which he ought to have applied on the mortgage debt instead of on other indebtedness not secured, and the estate of the mortgagor is insolvent, the mortgagor is not a competent witness, as against the heir, to show why the payments were not applied on the mortgage debt, as he is interested in the record, being liable to his assignee upon his implied warranty that the amount is due on the note, which appears to be on its face.

7.  In such case a witness can not testify in his "own behalf," either as a party to the suit or as a witness for another, in favor of his own interest.

8.  SAME—*exception when party may testify against heir.*  On bill to foreclose a mortgage against an heir of the mortgagee, where the heir testifies as to a conversation between his ancestor and the complainant, in which a direction was given as to the application of certain payments, the complainant, as to such conversation, is made a competent witness.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of DeKalb county; the Hon. C. W. UPTON, Judge, presiding.

May 1, 1874, John Althen made to Richard L. Divine his promissory note for $2500, for money borrowed, payable three years after date, with ten per cent interest, and secured the same by mortgage, made by himself and wife, of a store and lot in Sycamore, Illinois.  August 11, 1874, John Althen made to Daniel Pierce his promissory note for $1000, payable three years after date, with ten per cent interest, and secured the same by mortgage, executed by himself and wife, of the same store and lot, and also of a house and lot in Sycamore, which was then, and since has been, the home-

stead of himself and his family. The homestead right was waived by the mortgage. February 18, 1875, John Althen made to Henry Roth his note for $400, payable five years after date, and secured the same by mortgage, executed by himself and wife, upon said store and lot. December 21, 1877, Divine assigned his note aforesaid to John Plain, "without recourse," there being indorsement on the note of interest paid to May 1, 1877, and also executed to Plain a written assignment of the mortgage, which was recorded, and at about that same time Pierce assigned his $1000 note and mortgage to said Plain. August 11, 1876, John Plain recovered judgment against John Althen, in the DeKalb county circuit court, for $417.56, upon which execution issued August 12, 1876, and March 1, 1877, Plain recovered another judgment against John Althen for $575.95. No execution issued thereon. August 19, 1877, Divine recovered judgment against John Althen for $66. Execution issued August 19, 1877. There were other judgment creditors who held judgments against John Althen, which were liens upon the mortgaged premises.

October 20, 1879, John Althen died, leaving Frederica Althen, his widow, and John E. Althen, his only child, surviving him. On the 4th day of May, 1880, Henry Roth, the third mortgagee, filed a bill to foreclose his mortgage, making parties defendant said Frederica Althen and John E. Althen, John Plain, assignee of the Divine and Pierce notes and mortgages, and all the judgment creditors. All the defendants answered the bill. John Plain filed a cross-bill to foreclose the Divine and Pierce mortgages.

The original bill made the following allegation as to payments on the Divine mortgage. After averring that in 1874 Althen built a two-story brick building, with basement, on the mortgaged premises, the bill proceeds: "That ever since its completion, and up to the present time, said Divine and said Plain had rented for cash rent, to divers tenants, the

first and second stories of said building, and received to their own use the moneys so paid, with the understanding that such rent should be applied to said mortgage so given to Divine; that Divine and Plain, one or both, have received from such rents about $4000, which would more than pay said note and mortgage."

The decree found that while Divine held the note and mortgage given to him, he received rents amounting to $2,-002.08; that Divine applied said rents in payment of interest on said note to May 1, 1877, and the balance to the indebtedness due from Althen to Divine, but decreed that the rents received should be applied on the note and mortgage, and that the rents received by Plain should be applied on his notes and mortgages, and not on the judgments held by him. There was decree of foreclosure for the balance, the decree ordering that the store lot be first sold. Plain appealed.

Mr. M. O. SOUTHWORTH, Mr. A. J. HOPKINS, and Mr. N. J. ALDRICH, for the appellant:

Where a creditor holds two debts against another, and one is secured and the other not, and payments have been made by the debtor without any direction as to their application, it will be presumed that such payments were credited on the unsecured debt, and the creditor may so apply them. *Hare* v. *Stegall,* 60 Ill. 280.

In order to bar a party as a witness in a suit where the defendants are sued in a representative capacity, he must be interested in the event of the suit. He must have a legal, fixed interest in the event of the same,—one that will obtain for him, or exclude him from, the relief he seeks. Where the party has no such interest, any objection goes to his credibility, and not to his competency. *Greeley* v. *Dow,* 2 Metc. 176; *Stockham* v. *Jones,* 10 Johns. 21; *Ely* v. *Forward,* 7 Mass. 24; *Bean* v. *Bean,* 12 id. 19; *Kinsley* v. *Robinson,*

21 Pick. 327; *Bigelow* v. *Hyer*, 2 Allen, 243; *Jones* v. *Hugge-ford*, 3 Metc. 515; *Van Nuys* v. *Terhune*, 3 Johns. Ch. 82; *Rapelyed* v. *Mackie*, 6 Cow. 250; *Jackson* v. *Van Dusen*, 5 Johns. 144; *Corbley* v. *Wilson*, 71 Ill. 209; 1 Greenleaf on Evidence, sec. 400; *Illinois Central R. R. Co.* v. *Weldon*, 52 Ill. 290.

Whatever the mortgagee's rights may be to take steps to put himself in possession, it lies entirely with him whether he will exercise such rights, and until he does he has no more control of the property than a stranger. 2 Washburn on Real Prop. 157.

The court erred in the order marshaling the assets. The rule of compelling a mortgagee to satisfy his claim out of one fund to the exclusion of another, has no application between debtor and creditor. It applies only as between different creditors. *Rogers* v. *Meyers*, 68 Ill. 92.

The fact that a mortgage covers a homestead and also other property which is subject to a subsequent judgment lien, gives the debtor no right to have the latter property applied first to the payment of the mortgage debt, so that he may save his homestead. *White* v. *Polleys*, 20 Wis. 503; *Dodds* v. *Snyder*, 44 Ill. 53; Jones on Mortgages, sec. 1632; Thompson on Homesteads, sec. 714; *Webster* v. *Bronson*, 5 Bush, 522; *Jones* v. *Dow*, 18 Wis. 241.

Mr. A. B. COON, and Mr. J. J. FLANNERY, for the appellees Roth, Althen, Schmidt and Glade:

In both the original and cross-bills complaint was made against Frederica Althen, widow of John Althen, and John E. Althen, as heir of the mortgagor, and also against Divine, who were all real and necessary parties to the proceedings. Hence, both Divine and Plain, as such parties to the record and of interest, were incompetent to testify of their own motion, or on their own behalf, or the one for the other, against any person, such as an administrator or heir of any

deceased person, as to anything that transpired previous to the death of, or any conversations had with, such deceased person. Laws 1877, chap. 51, sec. 2, p. 475; *Boynton* v. *Phelps,* 52 Ill. 219; *Merrill* v. *Atkin,* 59 id. 19; *Langley* v. *Dodworth et al.* 81 id. 86; *Pyle* v. *Oustatt,* 92 id. 209; *Branger* v. *Lucy,* 82 id. 91; *Forbes* v. *Snyder,* 94 id. 374; *Pratt* v. *Pratt,* 96 id. 184.

Divine was interested in the event of the suit. Indorsement of the note "without recourse" does not relieve him from liability over to Plain for any deficiency in the amount claimed to be due by him on the note, and as it appeared from its face at the date of the assignment. In either case there was an implied warranty on the part of Divine that the amount called for by the note at that date was due and unpaid. 2 Parsons on Notes and Bills, (2d ed.) 21; *Linton* v. *Porter,* 31 Ill. 107; *Robinson* v. *McNeil,* 51 id. 225; *Tyler et al.* v. *Bailey,* 71 id. 35.

We do not deny the rule stated as to the application of payments, but contend the evidence abundantly shows there was a direction by the debtor as to their application. We also contend that there was no error in requiring the homestead to be last sold, or requiring the creditor to first exhaust his other securities for his debt before resorting to the homestead. The legislation on the subject shows a clear intent to preserve the homestead superior to paying one's debts, however honest they may be, unless it is expressly waived.

Mr. Charles Blanchard, for the appellant, in reply:

In chancery a defendant might always testify for a co-defendant, if his evidence did not necessarily involve his own interest. 3 Greenleaf on Evidence, sec. 318; *Smith et al.* v. *West et al.* 103 Ill. 336; *Smith* v. *Newton,* 38 id. 230.

Even if Divine was interested in the event of the suit, if that interest was balanced he was competent at common law. *Dyer* v. *Martin,* 4 Scam. 150; *Mixell* v. *Lutz,* 34 Ill. 388;

*Smalley et al.* v. *Ettell,* 36 id. 503; *Reman* v. *Buckmaster,* 85 id. 405; 1 Greenleaf on Evidence, secs. 399–420; 2 id. sec. 318.

If neither Althen nor Divine had made the application of the payments, the court would have applied them as Divine did. *Wilhelm* v. *Schmidt et al.* 84 Ill. 183; *Hare* v. *Stegall,* 60 id. 380.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court: .

The main question is as to the application of payments. During the time Divine held his note and mortgage he received rents from the store building. But he did not receive them as mortgagee in possession. He never was in possession of the mortgaged premises. The leases were all made by Althen, the mortgagor. It is found by the decree that during the time Divine held the note and mortgage, Althen was indebted to him on other notes to an amount which, with the interest on the note in question, exceeded all the rents Divine received, and that such other notes were paid during that time. We can have no doubt, from the evidence, that these other notes were paid from these rents. The notes being unsecured, Divine had the right to apply the moneys received to their payment, instead of to the payment of his secured note, and if he had not so applied them, the law would make that application, unless Althen had directed otherwise. (*Hare* v. *Stegall,* 60 Ill. 380; *Wilhelm* v. *Schmidt,* 84 id. 183.) There is no pretense of any direction of Althen upon the subject, more than as may be shown by a certain lease from Althen to one Friedman, made August 7, 1874, for a term of five years, at the rent of $650 per year, payable monthly, the rent being made "payable to R. L. Divine (who holds a mortgage) so long as Friedman occupies the same, or until the mortgage is paid off, if he occupies as long." This would be evidence tending to show the purpose of Althen that the rents

should apply on the mortgage, had all the rents received been under this lease. But Friedman occupied only one year, and paid $350 to Divine. This, and more, was applied on the Divine note, the interest for three years, to May 1, 1877, ($750,) being indorsed on the note as paid. We do not find, then, that there was any direction from Althen how the rents received should be applied, further, at least, than as to $350, and that it was erroneous to hold that they should be applied upon the mortgage debt, and not upon the unsecured indebtedness of Althen to Divine. We arrive at this conclusion entirely irrespective of the testimony of Divine in the case. Most, if not all, of the unsecured indebtedness to Divine which was paid from the rents received, is established by independent testimony, but as, perhaps, it may not establish the entire amount, and a part may rest upon Divine's testimony, it may be proper to consider the question of the admissibility of his testimony.

It is objected to the competency of Divine's testimony that he was interested in the event of the suit, and that he was not admissible as a witness against John E. Althen, the heir of the deceased mortgagor. The statute, in abolishing interest as a disqualification of a witness, makes the exception, that a party, or one interested in the event of the suit, shall not, of his own motion and in his own behalf, be allowed to testify therein when any adverse party sues or defends in certain representative capacities, one of them being that of heir. We are of opinion that Divine was interested in the event of the suit,—that he was interested in the record. Although he transferred the note to Plain without recourse, there was an implied warranty on his part that the amount appearing upon the face of the note to be due was unpaid. (2 Parsons on Notes and Bills, 21; *Robinson* v. *McNeill*, 51 Ill. 225.) If the result of this suit should establish the application of the payments to be on the mortgage note, then there would be a breach of the warranty as to non-payment,

and in a suit by Plain against Divine on the warranty, the record would establish the breach, and the amount of the liability,—hence the interest of Divine to show that the payments were on other indebtedness than the note.

But it is claimed that it was indifferent to Divine on which indebtedness the application is made,—that if made on the mortgage note, and so he be made liable to an action by Plain, he would have his action over against the estate on the unsecured indebtedness, and hence his interest is balanced. Without stopping to inquire how this might be were the estate solvent, so that the remedy over would be productive, we are satisfied, from the evidence, that the estate is insolvent, and that the remedy over would be unproductive in satisfaction, in which case the interest of the witness can not be said to be balanced. It is said that under this exception of the statute the witness must testify in his "own behalf," and that the witness did not here so testify. He did not testify in his own behalf as a party, but he did testify in his own behalf as a witness. We agree with the court below in holding this witness to be incompetent.

At the time John Plain received rents, when he was the holder of the Divine and Pierce notes and mortgages, he held two judgments against John Althen, one of which was a lien on the mortgaged premises subsequent to the mortgage liens, and subsequent to the lien of one other judgment, and his other judgment was not a lien, no execution having been taken out. The same remarks may be repeated, as to him, as have been made with respect to Divine, as to not being a mortgagee in possession, and as to having the rents received by Plain apply on his judgments, instead of on the mortgages he held. We must hold in regard to Plain, as we do with respect to Divine, that there is no sufficient evidence of any direction from Althen on which indebtedness of Althen the rents received should be applied, and therefore it was the right of Plain to have them applied on the judgments which

he held which were unsecured, and not on the mortgages. There was no evidence whatever of any direction of John Althen upon the subject, except the testimony of John E. Althen, that two or three months before his father died he heard a conversation between him and Plain, wherein Plain asked his father what he should do with the money received as rents from the store, and asked if he could apply it on the judgments he held, and his father told him he wanted it applied on the mortgage. John Plain contradicts this, testifying that he never received any directions from John Althen how to apply the money received for the rent, and denying that there was any such conversation as that testified to by John E. Althen. We are not able to make out of this testimony any direction from John Althen as to making application of the rents received. Plain is competent to testify in regard to the conversation testified to by John E. Althen, although he would not otherwise be a competent witness.

We think the decree improperly ordered that the store lot should first be sold. The rule as to compelling a mortgagee to satisfy his claim out of one fund to the exclusion of another has no application between debtor and creditor,—it applies only as between different creditors. *Rogers* v. *Meyers,* 68 Ill. 92.

The fact that a mortgage covers a homestead, and also other property which is subject to a subsequent judgment lien, gives the debtor no right to have the latter property applied first to the payment of the mortgage debt, so that he may save his homestead. *Jones* v. *Dow,* 18 Wis. 241; *White* v. *Polleys,* 20 id. 503.

It is suggested that this order of sale can do no harm to Plain, and therefore there is no error to give him any just cause of complaint; that as both his mortgages are prior to Roth's mortgage, all he has to do is to first offer the store lot at public sale, and if there is not sufficient bid upon it to satisfy both his mortgages, then to have the homestead lot

offered and sold. This entirely overlooks Plain's judgment, which is a lien on the mortgaged premises,—the second judgment lien in order. The situation is, that Plain has a mortgage which covers only the store property, and another which covers the store property and the homestead property, in which there is a waiver of the homestead, and he has a judgment which comes next after the Seus judgment. Now, it would be for the interest of Plain to have the homestead property first sold here, so that there will be more left which he may resort to for the payment of his judgment, and we think he should be left at liberty to have sale made in the order he may choose.

The decree must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*