## Chicago Title & Trust Co., Adm., etc., et al., v. Ellen McGlew.

1. APPLICATION OF PAYMENTS—*General Rule as to.*—In the application of payments the law makes the application in the manner most advantageous to the creditor: but in equity, the payment is applied first to the debt for which the security is the most precarious.

2. INTEREST—*As an Incident of the Debt, to be as Much Favored as the Principal.*—Generally, interest is a mere incident to a debt. It is a legal incident which the law attaches to an obligation to pay, where payment of the debt is delayed beyond the time of its maturity, and is as much favored as the principal.

3. ESTATES—*Of Deceased Persons, Distribution Regulated by Statute.*—Estates of deceased persons are distributed by virtue of statutory regulations and in such respect the statutes are the guide.

**Claim in Probate.**—Appeal from the Circuit Court of Cook County; the Hon. JOHN C. GARVER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed June 19, 1900.

WELLS & KELLY and TENNEY, McCONNELL, COFFEEN & HARDING, attorneys for appellants.

S. S. GREGORY, attorney for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

This is the case of a claim originally filed in the Probate Court against the estate of John T. Chumasero, deceased. The controversy is purely one of classification, or prefer-

ence, under the statute relating to the administration of estates. Section 70 of that act, as in force at the time of the death of Mr. Chumasero, and since July 1, 1889, to the present time, includes within the preferred list of the third class, "demands due common laborers, or household servants of deceased, for labor." There is no controversy as to the amount of appellee's claim. It was admitted by appellants, in the court below, that the claim was allowable, at the amount thereof, as of the seventh class. Nor is it at all disputed that appellee falls within the class of persons mentioned in the statute as a household servant, nor but that a part of her claim is due her for her labor, within the meaning of the statute, the contention in the Circuit Court, as here, being confined to the single question of classification.

The appellee worked for the decedent as a domestic servant in his family, from May 8, 1876, to April 15, 1896, and it is insisted that the written entries or memoranda relied upon to sustain the claim, tend to show such a mingling of interest and independent cash transactions with wages earned, as to defeat the claimed preference. The contentions of appellants may, therefore, be briefly said to be that the preference given by the statute to claims allowed as of the third class, can not include interest, or cash loaned, or wages earned, prior to July 1, 1889, the date of the taking effect of the particular provision of the statute referred to.

Exhibits, consisting of a one-page paper, and of two memorandum books, upon and in which entries appear in the handwriting of the decedent, were received in evidence, and it is not disputed that the entries are correct, and fully establish the amount due to appellee.

The entries on the one page paper, show a balance of $1,007.30 as due to appellee January 1, 1889, after crediting wages and deducting payments. In the account as there shown, there is no mention of interest, or of cash received of appellee. In other words, those entries relate wholly to wages earned by and cash paid to appellee.

This balance of $1,007.30, again appears on the memorandum books, and is there added to wages earned subsequent to January 1, 1889, and to sundry cash items apparently received prior thereto by the decedent from the appellee, and interest on the several sums is credited.

Then appears a summary of separate accounts, called, respectively, cash account and wages account, in each of which interest is included, and a balance stated, as of January 1, 1896, to be due appellee on account of cash, $735.17, and on account of wages $3,332.30.

Then follows, in items, a list of cash payments to appellee, amounting, with $98.70 interest charged thereon, to $891.98.

And last of all, is shown a recapitulation of amounts due to appellee on January 1, 1896, as follows:

| | |
|---|---:|
| " On cash account | $ 735 17 |
| On wages account | 3,332 30 |
| | $4,067 47 |
| Amount of cash drawn | 891 98 |
| Amount due January 1, 1896 | $3,175 49" |

And it is for this amount, so stated in the handwriting of Mr. Chumasero, on books kept for the purpose of showing the account between himself and the appellee—one of which was retained by him and the other by appellee—that the claim was allowed.

It would seem from these memoranda, that though there was an inextricable mingling of interest in the accounts, that the amount of cash received by decedent from appellee and paid by him to her was separated from the rest, and was intended so to be kept. It is clearly distinguishable.

It plainly appears that the decedent received from appellee an amount of cash which, with interest added, amounted to $735.17, and that, during the same period of time, he paid to her $793.79 (to which $98.70 of interest thereon makes $891.98). He therefore paid to appellee an amount more than enough to wipe out all the cash received from her, with interest thereon added.

Now, what is the law with reference to application of payments, where neither debtor nor creditor has expressly indicated upon which of two existing different claims the payments shall be applied, one of the claims being secured and the other not?

In Wilhelm v. Schmidt, 84 Ill. 183, it is said:

"It is held to be equitable to apply the payment first to that debt for which the security is most precarious. * * * The authorities are all but unanimous in establishing the principle that the law will apply a payment to the debt which is least secured. * * * Indeed, in that case, the broader rule was recognized, that the law would make the application in the manner most advantageous to the creditor; and, although there are to be found exceptional cases to the contrary, it is believed that this is the general and predominant principle under the authorities." See also, Plain v. Roth, 107 Ill. 588.

We regard the preference, given by the statutes to claims for wages, as making such claims secured, within the principle just quoted, and that the payments thus made by decedent were properly applied by the Circuit Court to the extinguishment of the unsecured loans of money. The policy of the State as declared, in not only the statute under consideration, but also in the exemption and insolvency acts, is to give security for the payment of wages. The next question is as to the interest included in the claim. All question of whether interest might properly be allowed as a general claim against decedent's estate, is eliminated by the express agreement of decedent himself, evidenced by his act in crediting appellee with it, in his lifetime. It is, therefore, only to be determined whether interest may follow the principal in the preference given by the statute to the latter—the wages upon which interest was agreed to be paid by decedent.

Generally, interest is a mere incident to a debt. It is a legal incident that the law itself attaches to an obligation to pay where payment of the debt is delayed beyond the time of its maturity, and is as much favored as the principal. McConnel v. Thomas, 2 Scam. 313; Willard v.

Dubois, 29 Ill. 48; Tucker v. Page, 69 Ill. 179; Heiman v. Schroeder, 74 Ill. 158.

Had these wages been evidenced by the promissory note or due bill of decedent, we see no reason why, from that mere fact, they would not have been as much entitled to be preferred under the statute, as though evidenced, as here, by an account stated. (Fitzsimmons v. Cassell, 104 Ill. 352.) The security afforded by the statute would still cling to the wages, by whatever form their existence might be evidenced.

It is not conceivable by us that if this claim were proved by a due-bill signed by decedent, payable one day after date, and so drawing interest after maturity, the claim might be allowed as of the third class to the extent of the principal, and only as of the seventh class to the extent of the interest. A surety, even, upon a non-interest-bearing note, would be bound to pay interest after maturity of the note, to the same extent as the principal maker of the note, and this would be, not because the interest was within the letter of his obligation, but because it was an incident to and followed the debt which he had bound himself for.

Take the case of a mortgage given to secure a non-interest-bearing note. It surely can not be successfully contended that the mortgage would not stand as security for lawful interest that should accrue after the note matured.

This would not be because the note itself drew interest after maturity, but because the law attached interest upon the debt after it became payable. So, here, the security given by the statute to wages would extend not only to the wages themselves, but to the interest that the law would attach to them after, by agreement of the parties, they became due; and this would be so, though there was not, as there was in this case, an express agreement to pay interest. In Fitzsimmons v. Cassell, *supra*, interest was included in a claim for trust moneys allowed in the sixth class, without question.

The other contention remains, that wages earned prior

to July 1, 1889 (the date when the particular clause of the statute before quoted went into force), are not included within the third class of claims.

This statute applies only to the distribution of estates of deceased persons, and, in our view, rules applicable to the estates of insolvent corporations, or persons, such as cited by appellants, have no bearing.

Estates of deceased persons are distributed by virtue of statutory regulations, and, in such respect, the statutes are the guide. Kochersperger v. Drake, 167 Ill. 122. See also, Magoun v. Ill. Trust & Savings Bank, 170 U. S. 283.

Now, the legislature, within its undoubted power, by the act ·referred to, prescribed a rule of distribution of the estates of deceased persons, and, in our view of the question, that rule, being in force at the time of Mr. Chumasero's death, and ever since, must control, irrespective of what may have been an earlier rule. The effect of the statute is to say, that claims for wages earned and unpaid at the time of decedent's death shall be distributed as there declared, no matter when earned. There is no such thing as the acquiring of a vested right to have the estate of a deceased person administered or distributed in accordance with laws existing at the time a debt accrues. The law in force at the time of the death of the testator or intestate will control in such respect. Paschall v. Hailman, 4 Gil. 285.

Some minor questions have been discussed in the briefs, but we believe we have disposed of the principal and controlling ones that are involved, and that nothing useful remains to be done, except to affirm the judgment of the Circuit Court, which is accordingly done.

Mr. Presiding Justice Horton does not concur in the opinion as a whole.