BENJAMIN P. VAN COURT, impleaded with Jared C. Hunt *et al.*, Plaintiff in Error, *v.* ALVIN W. BUSHNELL and DAVID MCKINNEY, Defendants in Error.

ERROR TO PEORIA.

A note, unless it is taken in payment absolutely, will not discharge a mechanics' lien.

If but one of several persons who purchased materials for a building, own the land, the lien will be good.

Van Court, impl., etc., *v.* Bushnell et al.

A variance between the proof and the contract described in the petition for the lien, as if it is alleged that the money was to be paid in April, and it appears that the money was to be paid on the delivery of the material, will be fatal.

THIS was a petition for a mechanics' lien, stating contract with Hunt & Bailey in latter part of October, 1857, for sale and delivery of lumber for dwelling-houses on lot one, block thirty-five, in Underhill's addition to Peoria, which lumber was to be delivered at customary market price, as Hunt & Bailey might want it, and was to be paid for on the first day of April, 1858. Pursuant to said contract, complainants sold and delivered, between November 2nd and December 12th, 1857, lumber to the amount of $415.53. Hunt & Bailey paid $15.53. January, 23rd, 1858, said Jared C. Hunt gave *his* promissory note for balance of $400, due on or before April 1, 1858, with interest at *ten* per cent. Firm of Hunt & Co. dissolved January 2, 1858. The lumber was received by Hunt & Bailey and used on said lot. Charges title in Underhill, bond for deed from him to Houghton, and in some manner to Hunt, and in some manner from Hunt to Van Court. Six months not elapsed since last lumber furnished and price became due. Note has become due, but not paid. Prayer for process, sale of premises, etc.

A demurrer was filed by Van Court, assigning that,

1. The settlement and taking the note of Hunt discharged the lien, if any had attached.

2. The contract which the court is asked to enforce is unknown to the statute of mechanics' lien.

3. The petition is otherwise defective.

This demurrer was overruled.

Van Court in his answer sets up that he is owner of lot by bond from Underhill to Houghton, February 1, 1857, assigned to Hunt, October 26th, 1857, and assigned to Van Court, January 11, 1858. Admits, as petitioners allege, a contract with Hunt & Bailey jointly. Don't know whether any lumber was used on premises, and calls for proof. If any, not more than $200 worth was used. Charges that the price of lumber was due December 12th, 1857, and that extending the time of payment and taking note at ten per cent. discharged the lien, if any had attached. Van Court purchased the premises in good faith, January 11th, 1859, and has paid about $400, and has undertaken to pay about $800 more. Knew of no lien when he purchased, etc. Hunt assured him there was no incumbrance.

Sworn to in usual form.

The bill was dismissed as to Houghton, and taken *pro confesso* as to Hunt, Bailey and Underhill. Trial by jury as to Van Court. Verdict as follows: "We, the jury, find for complain-

40

ants, and assess their *damages* at four hundred and twenty-seven dollars, and sustain the lien as against Van Court." Decree that Hunt & Bailey pay $400 and costs by June 1, 1859, and in default that all the title, etc., of Hunt, Bailey *and Van Court,* and each of them, in the premises, be sold, without redemption, and possession given, etc.

A motion for a new trial was overruled.

Motion to vacate decree, because not warranted by· or in accordance with the verdict, was heard and overruled.

*De Witt C. House* testified, that Hunt and Bailey got lumber of complainants in November and December, 1857, to use on said lot; heard Hunt say they couldn't pay down for it. Hunt and Bailey were in partnership; I understood from them both that they got lumber from complainants. The lumber was used on the lot; understood from them that they were not to pay as they got it; they told me that they were to pay as they could through the winter, and the balance in the spring.

*George Clark* testified, that Hunt & Bailey put up the buildings House described; never made any measurement, but should think $300 to $400 worth of lumber *might* have been used. Know nothing about the contract.

*Anthony Kunzon* testified, that in November, 1857, Hunt got 12,000 feet of lumber from complainants' yard; they also delivered " considerable more ; " the last was delivered about the 10th or 12th December.

Van Court then called *John O. Petrie,* who testified, that in October, 1858, he heard complainant McKinney say that, " *no time was specified for the payment of the price or value of the lumber that Hunt or Hunt & Bailey had from him and Bushnell in November and December,* 1857; *that they expected to get their money as the lumber was delivered ; that they tried to do so, but failed, and afterwards gave Hunt time, and took his note and an assignment of a policy of insurance on the buildings,"* etc. I was present when Van Court purchased. Hunt told him there was no incumbrance on the premises; Bailey was not present. This sale was between the 11th and 16th December, 1857.

CHARLES C. BONNEY, for Plaintiff in Error.

JONATHAN K. COOPER, for Defendants in Error.

CATON, C. J. Unless the note in this case was taken in absolute payment of the debt, it did not discharge the lien. It served but to liquidate the demand, and left the party to· seek his satisfaction upon the original contract. The law is the same in

this case as it is in any other, where a note has been taken and an action afterwards brought on the original consideration, and the note merely used to show the amount at which the debt had been liquidated.

Nor did the fact, that but one of the parties who purchased the lumber and built the house, owned the land, deprive the party of the lien. In our opinion, in such a case the statute creates the lien. It might however be different, if Bailey only joined in the contract as security for the payment of the price of the lumber, and this was understood and known to the creditors.

But the fatal difficulty in this case is, a variance between the contract as alleged in the petition, and the one proved on the trial. In the petition, it is alleged, that by the contract the lumber was to be paid for on the first of April,—by the contract, as proved by the witness House, they were to pay for the lumber as they could through the winter, and the balance in the spring. Now the first of April might be a very equitable time for the parties to agree to a settlement under so loose a contract as this, but it is not the time fixed by the terms of the contract for the payment. By the terms of the contract, the creditors could not be legally called on for the money till the expiration of the ensuing spring. Although they had a right to pay at least a part of it before that time, they had also the right to take the whole of the spring to pay the money in. This was a fatal variance. If we take the testimony of Petrie as giving the true terms of the contract, then there was no credit given, and the money was due on delivery of the lumber, and the variance was as fatal as in the other case. There is no evidence showing such a contract as is alleged.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*