193    457
e114a¹596

THE CHICAGO TITLE AND TRUST COMPANY *et al.*

*v.*

ELLEN McGLEW.

*Opinion filed December 18, 1901.*

1. SETTLEMENT OF ESTATES—*probate court exercises equitable powers in passing upon claims.*  In passing upon and classifying claims against an estate the probate court exercises equitable powers, and may look beyond forms to the substance of claims.

2. SAME—*what does not affect classification of claim for wages.*  That the decedent and his household servant kept an account showing the amount of wages due her, does not change the character of her claim from that of a claim for wages to an account stated, as respects classification.

3. SAME—*when claim for wages is not changed in character to general indebtedness.*  That the account kept between the decedent and his household servant for wages shows, on its face, that there were items for cash loaned to or left with the decedent by the servant, does not change the character of the claim to that of general indebtedness, where it also appears from the account that the servant had drawn more cash than she had left with the decedent.

4. SAME—*classification is fixed by the law in force at decedent's death.*  The fact that part of the wages due a servant was earned before the law classifying claims for wages went into force does not affect her right to have the entire claim allowed as of the class fixed by such law.

*Chicago Title and Trust Co.* v. *McGlew*, 90 Ill. App. 58, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN C. GARVER, Judge, presiding.

WELLS & KELLY, and TENNEY, McCONNELL, COFFEEN & HARDING, for appellants:

Appellee's claim is not of such a character that it comes within the meaning of the statute governing claims of the third class, which applies to demands due household servants for labor. *Silver* v. *Williams,* 17 S. & R. 292.

Even if a part of appellee's claim could be brought within the provision of the statute governing claims of the third class, that right has been lost by intermingling that part of the claim with other items for which she is entitled to no priority, so that they cannot be separated. Jones on Liens, sec. 1023; *McMaster* v. *Merrick,* 41 Mich. 511; *Clark* v. *Stilson,* 36 id. 487; *Hiscock* v. *Norton,* 42 id. 325; *Kirtley* v. *Morris,* 43 Mo. App. 144; *Baker* v. *Fessenden,* 71 Me. 292; *Kelly* v. *Kelly,* 77 id. 135; *Union Trust Co.* v. *Trumbull,* 137 Ill. 146; *Braden* v. *Brown,* 106 id. 519; *Throop* v. *Sherwood,* 4 Gilm. 92.

Appellee's claim not being within class 3, must be within class 7. *Shepard* v. *Furness,* 153 Ill. 590; *Wilson* v. *Kirby,* 88 id. 566.

The statute which went into effect July 1, 1889, giving a preference to demands due laborers, does not apply to claims for wages earned prior to the passage of the act. *People* v. *Remington,* 45 Hun, 329; *United States* v. *Bryan,* 9 Cranch, 374; *McCahill* v. *Hamilton,* 20 Hun, 388; Potter's Dwarris, 162, note.

S. S. GREGORY, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This case comes by appeal from the Appellate Court for the First District, and is reported in 90 Ill. App. 58. That court, in its opinion by Mr. Justice SHEPARD, made the following statement of the case, which we adopt:

"This is the case of a claim originally filed in the probate court against the estate of John T. Chumasero,

deceased. The controversy is purely one of classification or preference under the statute relating to the adminis-' tration of estates. Section 70 of that act, as in force at the time of the death of Mr. Chumasero, and since July 1, 1889, to the present time, includes within the preferred list of the third class, 'demands due common laborers, or household servants of deceased for labor.' There is no controversy as to the amount of appellee's claim. It was admitted by appellants in the court below that the claim was allowable, at the amount thereof, as of the seventh class. Nor is it at all disputed that appellee falls within the class of persons mentioned in the statute as a household servant, nor but that a part of her claim is due her for her labor, within the meaning of the stat-ute, the contention in the circuit court, as here, being confined to the single question of classification.

"The appellee worked for the decedent, as a domestic servant in his family, from May 8, 1876, to April 15, 1896. * * * Exhibits, consisting of a one-page paper and of two memorandum books, upon and in which entries ap-pear in the handwriting of the decedent, were received in evidence, and it is not disputed that the entries are correct and fully establish the amount due to appellee. The entries on the one-page paper show a balance of $1007.30 as due to appellee January 1, 1889, after credit-ing wages and deducting payments. In the account as there shown there is no mention of interest or of cash received of appellee. In other words, those entries relate wholly to wages earned by and cash paid to appellee. This balance of $1007.30 again appears on the memoran-dum books and is there added to wages earned subsequent to January 1, 1889, and to sundry cash items apparently received prior thereto by the decedent from the appel-lee, and interest on the several sums is credited. Then appears a summary of separate accounts, called, respect-ively, cash account and wages account, in each of which interest is included, and a balance stated, as of Janu-

ary 1, 1896, to be due appellee, on account of cash $735.17 and on account of wages $3332.30. Then follows, in items, a list of cash payments to the appellee, amounting, with $98.70 interest charged thereon, to $891.98. And last of all is shown a recapitulation of amounts due to appellee on January 1, 1896, as follows:

On cash account....................................... $735.17
On wages account...................................... 3332.30

                                                        $4067.47
Amount of cash drawn................................... 891.98

Amount due January 1, 1896............................ $3175.49

"And it is for this amount, so stated in the handwriting of Mr. Chumasero on books kept for the purpose of showing the account between himself and the appellee— one of which was retained by him and the other by the appellee—that the claim was allowed.

"It would seem from these memoranda that though there was an inextricable mingling of interest in the accounts, the amount of cash received by decedent from appellee, and paid by him to her, was separated from the rest, and was intended so to be kept. It is clearly distinguishable. It plainly appears that the decedent received from appellee an amount of cash which, with interest added, amounted to $735.17, and that during the same period of time he paid to her $793.79, to which $98.70 of interest thereon makes $891.98. He therefore paid to appellee an amount more than enough to wipe out all the cash received from her, with interest thereon added."

The questions now raised and insisted upon by appellants for a reversal are, first, that the appellee and decedent having stated the account between them, it assumed a new character,—that is, "account stated,"—and that the court cannot now inquire into it to ascertain the consideration for the items that entered into it; second, that it appearing from the account itself that there were items for cash loaned to or left with the decedent by the

claimant for which she was not entitled to priority, there is such intermingling of accounts that the court cannot classify this claim other than as general indebtedness of the seventh class; third, that something like one-third of the wages claimed having been earned prior to July 1, 1889, when the act of Assembly went into effect that placed claims of household servants for labor in the third class, appellee was not entitled to have that part of her claim so classed.

In support of the first contention appellants cite and rely on *Silver* v. *Williams*, 17 S. & R. (Pa.) 292, in which it was held that the right of preference was waived by the servant "taking from the intestate single bills payable at a future day, with interest." This opinion was delivered something near a half century ago, and we have been unable to find it followed or cited as authority in any other case. It is not the rule in this State. This court has held a number of times that the taking of a note bearing interest is not the discharge or waiver of a lien. (*VanCourt* v. *Bushnell*, 21 Ill. 624; *Brady* v. *Anderson*, 24 id. 111; *Paddock* v. *Stout*, 121 id. 571.) All these cases were where mechanics or material-men had taken the notes of the owners of the property, and we held that the lien was not waived thereby, and that the notes merely served to liquidate,—that is, to ascertain,—the amount of the demand. Mechanics' and material-men's liens are purely statutory, are strictly construed, and, we think, are analogous to the priority of classification claimed by the appellee. The general rule is that a lien is not waived by the lienholder's taking the bond or bill single of the debtor, or his negotiable promissory note, or his check, if not presented or if unpaid, or any instrument involving merely his personal liability. (19 Am. & Eng. Ency. of Law,—2d ed.—p. 29.) And the renewal of a note so taken is not a waiver of the lien. *Cordova* v. *Hood*, 17 Wall. 1.

The consideration or character of the debt or demand against an estate is what determines the class to which

it belongs, and we can see no reason why a household servant might not take the note of the master, and in probating it, for the purpose of classification, show by parol that it was given for his wages for labor.

Probate courts, in passing upon claims presented against estates, exercise equitable powers, and may look beyond forms to the substance. (*Moore* v. *Rogers*, 19 Ill. 347; *Dixon* v. *Buell*, 21 id. 202.) No written pleadings are required. (*Wolf* v. *Beaird*, 123 Ill. 585; *Thorp* v. *Goewey*, 85 id. 611.) If a physician should file a claim against an estate, including items previous to the last sickness for which he has no priority, and also items for the last sickness, could not the court, in passing on the claim, look into the items and classify according to their rights under the statute? If this whole account had originally been for wages only, but had been stated in the manner it was between the parties and showed upon its face it was for labor of a servant, it does not seem to us there could be a question but that the claimant could call the attention of the court to the character of the debt or demand for the purpose of classification, and that the court would not be precluded, on the theory of *account stated*, from looking beyond the mere balance of account; and yet such is the logic of appellant's first contention.

We cannot accede to appellants' second contention. The statement of the account, conceded to be in the handwriting of decedent, begins with the following: "Ellen McGlew commenced May 8, 1876; wages from this date to July 1, 1880, were $12 per mo.; from July, 1880, was raised to $4 per week until October, 1886, then $5 per week." And following this is a computation of her wages for the three periods at the rates named. And upon a later statement we find the items: "Wages, Jan. 1/89 to Jan. 1/96, 7 yrs., $1820." We see no difficulty in determining, from an inspection of the account, the total wages earned, or from the whole account, applying the credits by well known rules, the balance due for wages.

We regard *Paschall* v. *Hailman*, 4 Gilm. 285, as decisive against appellants' third contention. The rights of creditors, as to the matter of the order in which the demands shall be paid, are fixed by the laws in force at the time of the death of the decedent. (Binmore's Probate Prac. sec. 403; *Colton* v. *Field*, 131 Ill. 398.) Prior to our statutes upon the subject, the dignity and priority of claims were governed by the common law, but when the legislature took hold of the subject it created a rule of its own, widely variant from the common law rule, and the latter no longer controlled. The power of the General Assembly to thus regulate the passing and distribution of estates can hardly, at this age, be questioned. It may take away the right of curtesy at any time before it is consummated by the death of the wife. (*Henson* v. *Moore*, 104 Ill. 403.) It may restrict and limit the power to devise already acquired real estate, (*Sturgis* v. *Ewing*, 18 Ill. 176,) and enable illegitimates to become the proper medium through which to transmit estates. (*Bales* v. *Elder*, 118 Ill. 436.) It may, as it did in *Paschall* v. *Hailman, supra*, convert a judgment already entered and in full force, and which at the time of its entry was by the common law second, only, to the cost of administration, to a claim of the seventh class; and no sufficient reason has been suggested, and we know of none, why it could not declare that any claim for wages of a servant that was entitled to be allowed against an estate at any time thereafter should be placed in the third class, without regard to whether the services were rendered before or after the act.

We think, upon the whole case, the judgment of the Appellate Court is right, and it is affirmed.

*Judgment affirmed.*