### Edward F. Trego, Trustee for use of William Moore and Alfred H. Trego, Appellant, v. The Estate of James A. Cunningham, Deceased, Appellee.

1. Principal and surety, § 96*—*insolvency of cosureties as affecting right to contribution in law and equity.* In a suit at law against a cosurety for contribution, the surety can only recover a cosurety's aliquot part calculated on the whole number of sureties without reference to the insolvency of the cosureties, while in equity, if one or more are insolvent, the loss is apportioned among the solvent ones.

2. Contribution, § 2*—*jurisdiction of Probate Court to follow the*

*See Illinois Notes Digest, Vols. I to XV, and Cumulative Quarterly, same topic and section number.

*rule in equity.* Where a trustee for the use of sureties on notes presented a claim against the estate of a deceased cosurety, *held* that the Probate Court could follow the rule of a court of equity as to the extent of recovery, by considering the number of insolvent cosureties and apportioning the loss on the solvent ones.

3. Bills and notes, § 177*—*when indorsers liable as guarantors and cosureties as to each other.* The provisions of paragraphs 2 and 3 of sec. 64 of the Negotiable Instrument Act of 1907, J. & A. ¶ 7703, make indorsers, before delivery of a note payable to the order of the maker, guarantors and cosureties as regards each other.

4. Bills and notes, § 183*—*liability of indorsers as to each other.* In determining the liability of indorsers to each other, section 68 of the Negotiable Instrument Act of 1907, J. & A. ¶ 7707, should be read in connection with the provisions of section 64 of such Act, J. & A. ¶ 7703.

5. Courts, § 105*—*equitable jurisdiction of Probate Courts.* Although Probate Courts have no general chancery jurisdiction, yet in probate matters they have jurisdiction of an equitable character, may adopt the forms of equitable proceedings and grant relief of an equitable nature where justice and equity require such relief.

Appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. Kimbrough, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 5, 1914, Rehearing denied June 25, 1914. *Certiorari* allowed by Supreme Court.

H. M. Steely, H. M. Steely, Jr., and J. B. Mann, for appellant.

Dyer & Dyer, Rearick & Meeks and Frank Lindley, for appellee.

Mr. Presiding Justice Thompson delivered the opinion of the court.

Edward F. Trego, trustee for the use of William Moore and Alfred H. Trego, presented to the Probate Court of Vermilion county two claims against the estate of James A. Cunningham, deceased. The claims are for contribution to the amounts alleged to have been paid by the trustee on behalf of the beneficiaries on notes made by the Hoopeston Horse Nail Company, pay-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

able to itself and which, before delivery, were indorsed by the company and James A. Cunningham, William Moore, Alfred H. Trego, John L. Hamilton, C. S. Crary and W. W. Todd.

One of the claims is for $110,601.58 being one-third of the sum of $331,804.76 that claimant insists he paid for the beneficiaries in satisfaction of seventy-six of said notes. The other claim is for $2,017.61, one-third of the sum of $6,052.84 which claimant insists was paid by him for the beneficiaries in satisfaction of four other notes. From the judgments rendered in the Probate Court appeals were taken to the Circuit Court, where by agreement of the parties they were consolidated and tried by the court without a jury. A judgment was rendered in the consolidated case allowing the claim to the amount of $47,626.46 as of the seventh class, to be paid in due course of administration. An appeal was prayed by both parties and the claimant has perfected his appeal.

The appellant assigns as error that the court should have entered judgment in his favor for $95,252.92, and that the evidence showing that Todd, Crary and Hamilton were insolvent; the court should have held the estate liable for one-third of the amount paid by the trustee in satisfaction of the notes of the company, while it only held the estate liable for one-sixth of the sum paid by the trustee.

The appellee has assigned cross-errors and contends (1) that the five surviving indorsers of the notes loaned their credit to the company after the death of Cunningham and that the principal debtor paid the notes; (2) that Moore's and Trego's names were indorsed above Cunningham's name on the notes and that therefore they cannot have contribution without proof of a contract that all indorsers should be equally liable; (3) that a large part of the notes and interest was paid with the assets of the company; (4) in hold-

ing the propositions of law submitted by appellant; and (5) that the judgment is excessive. Other errors are assigned but are not argued.

Counsel for appellant state in their argument that the court only rendered judgment for one-sixth of the amount that it found had been paid by the beneficiaries of appellant as coindorsers of the notes of the company, and counsel for appellee in their statement and argument admit that the court only rendered judgment for one-sixth of the amount so paid. There is nothing in the record that justifies such statement of appellant and the admission of appellee. The ruling of the court on the propositions of law and fact presented by appellant shows that the court held that appellant was entitled to recover one-third of the amount paid by the beneficiaries as such indorsers, and this court must review the case as it appears in the record.

The record is voluminous, yet there is little controversy over the facts. Cunningham died January 11, 1910. The Hoopeston Horse Nail Company was a corporation engaged in the manufacture of horseshoe nails and the sale of collar pads. James A. Cunningham, William Moore, Alfred H. Trego, John L. Hamilton, C. S. Crary and W. W. Todd, held all the stock of the company and were directors. The Horse Nail Company, Hamilton, Crary and Todd were insolvent. At the date of Cunningham's death his name appeared as indorser with the other five stockholders on $318,318.23 of the company's paper. These notes were about eighty in number and were in the following form:

"$5,000.00   Hoopeston, Ill., July 16, 1909   No.————.

Six months after date, we, or either of us, promise to pay to the order of ourselves Five Thousand and no/100 dollars, value received, with interest at 7 per cent per annum from maturity payable annually at Hoopeston National Bank, Hoopeston, Illinois.

HOOPESTON HORSE NAIL COMPANY, (SEAL.)
    By A. H. TREGO, Pres. (SEAL.)
indorsed as follows:
    HOOPESTON HORSE NAIL COMPANY,
    By A. H. TREGO, Pres.
C. S. Crary, William Moore, A. H. Trego, John L.
Hamilton, J. A. Cunningham, W. W. Todd."
except that they differed as to the amounts and dates,
and five of them bore interest at a less rate and the
order of the indorsers varied, in that while all six di-
rectors indorsed the notes, with the exception of one
$10,000 note held by the Hoopeston National Bank, on
which Cunningham's name did not appear for the rea-
son he was an officer of the bank, and that sometimes
Cunningham's name was indorsed above the names of
either Moore or Trego and sometimes after their
names. These notes were held by banks scattered over
the States of Illinois and Indiana wherever a bank
would discount the paper.

After the death of Cunningham the remaining di-
rectors undertook to negotiate with the representatives
of his estate to arrive at some agreement whereby the
estate would remain liable for its share of the liability
on the company's notes and on new notes that should be
issued to pay notes as they matured, but they did not
succeed in making any agreement.

At the date of Cunningham's death the assets of the
company consisted of $23,124.33 in the hands of the
treasurer, of which $10,000 was derived from the dis-
count of the $10,000 note at the Hoopeston National
Bank, about $75,000 worth of merchandise bills and
accounts receivable and real estate of the value of
$15,000, in all about $113,000.

Immediately after Cunningham's death a circular
letter was sent out by the company to all the holders of
its paper advising them of his death, and stating that
the paper of the company would be issued as before
and indorsed by the five surviving indorsers who were
represented to be worth $1,500,000.

The company succeeded in discounting eight notes, amounting to $42,500 made by it and indorsed by the five directors, and with part of the proceeds of these notes it paid six of the notes, amounting to $27,500, included in the itemized claim of appellant. The remaining proceeds of the eight notes, with $56,161.51 received from the sale of nails and pads, was used to retire $40,500 of the notes listed in appellant's claim and a $2,500 note on which Cunningham's name was indorsed, but which was probably not negotiated until after his death, it being in the mail at that time, and in paying the expenses of running the business of the company for several months after Cunningham's death. The remaining notes of the company outstanding at the death of Cunningham with interest at five per cent. from the date of payment, amounting in all to $285,958.76 were taken up with the proceeds of notes executed by the five surviving directors, and on which the name of the company did not appear. Notes executed by these five directors are hereinafter called joint notes.

After the attempt to make an arrangement with the Cunningham estate under which it would remain liable for the indebtedness of the company had failed, the five remaining directors signed a large number of notes in blank, and left them in the custody of Todd, the manager of the company. After February 1, 1910, if the holder of one of the notes on which Cunningham's name appeared as an indorser with the other directors, wanted payment of his note, he was given a joint note, if he would accept it; if he would not accept such a note, the Horse Nail Company borrowed the money elsewhere on one of the joint notes. The proceeds of the joint notes were deposited in the bank to the credit of the company until May 10, 1910, and were paid out by the check of the company in the payment of current expenses of the company, and in taking up notes as they matured the company appears to have used the pro-

ceeds as it pleased. A stipulation shows that forty-three notes included in appellant's claim and including the $40,500 of notes paid with money from other sources than the proceeds of joint notes on which Cunningham's name appears, the principal of which amounts to $150,718.23, were paid off by the checks of the Horse Nail Company without issuing joint notes to the holders.

After May 10, 1910, when a joint note was negotiated the proceeds were placed to the credit of the Horse Nail Company, and when a note came due the company issued its check to Trego, trustee, and the trustee issued his check to the creditor. After November 15, 1910, Trego and Moore furnished cash to pay some notes, and when they furnished cash they took notes executed by the other directors either to themselves or by themselves and the other directors to third parties for their own use.

The appellee insists that because of the method adopted in the payment of the notes of the Horse Nail Company and the method by which the money was procured that was used to pay the notes, that the payment was not made by the beneficiaries of appellant but by the original debtor, the Horse Nail Company. The evidence tends to show that a stock of these joint notes, signed in blank, was kept on hand in the possession of Todd, the manager of the company as the agent of Moore and Trego, and when it was necessary to use one, it was filled in with the date and amount and put in circulation. The Horse Nail Company was insolvent and unable to pay its notes or continue in business without financial assistance. The makers of the joint notes in lending the company their credit and executing their notes to it, which it sold without its indorsement, secured to the company the means with which it paid its notes and for a time continued its business. The transactions up to May 10, 1910, have the appearance of a loan of the credit of the makers

of the joint notes rather than the payment of a security debt. After that time the notes were paid by the trustee or the beneficiaries until all the company's notes were paid. It also appears that Moore and Trego were only making these joint notes for the purpose of paying off the company's notes that the assets of the company, when reduced to cash, were insufficient to pay, and of which they were the only solvent guarantors.

The appellant offered and the court held the following propositions of law:

"It being shown that six parties endorsed the notes on which the claims in this case are founded, on the back thereof, to-wit: C. S. Crary, A. H. Trego, William Moore, W. W. Todd, J. A. Cunningham, and John L. Hamilton, and it being shown that C. S. Crary, W. W. Todd and John L. Hamilton are each insolvent, the Court holds it to be the law that the loss should be apportioned equally between William Moore, A. H. Trego, and the estate of J. A. Cunningham, deceased, to-wit, each one bearing the one-third part thereof, with interest.

"2. The Court holds it to be the law that where several parties are liable as makers, or as sureties, or as endorsers, or as guarantors, and one or more of them pay the debt or demand, they are entitled to contribution from the other solvent makers, sureties, endorsers or guarantors, and that the loss must be apportioned among the solvent parties, equally.

"3. The Court holds it to be the law that in the allowance of claims, on appeal from the Probate Court, the jurisdiction of the Court extends to claims of both a legal and an equitable character, and that the Court acts as a court of equity in the allowance of claims and is governed by the same equitable rules and principles that govern in a proceeding in equity."

The appellant also asked the court to hold, as a question of law, that Crary, Todd and Hamilton under the evidence were at the time of the death of Cunningham and now are insolvent; this the court marked "Held as a question of fact, only." The court having

held on every proposition of law and fact as requested by appellant, he has no reason to complain concerning the holdings of the court.

Appellee however contends that the court erred in its holding on the propositions of law. The contention of appellee regarding the first proposition of law is that the six indorsers of the notes of the company outstanding at the time of Cunningham's death were ordinary indorsers, under the provisions of the statute (section 68, Neg. Inst. Act of 1907, Hurd's R. S., ch. 98, § 86, J. & A. ¶ 7707) which provides: "As respects one another indorsers are prima facie liable in the order in which they indorse but evidence is admissible to show that as between or among themselves they have agreed otherwise." It is argued that there is no evidence of any agreement among the indorsers and that in every note Cunningham's name appears below that of one of the beneficiaries.

The provisions of paragraphs 2 and 3 of section 64 of the Negotiable Instrument Act of 1907 (Hurd's R. S., ch. 98, § 82, J. & A. ¶ 7703) are an answer to appellee's contention and have been overlooked. This section of the statute concerns the liability of indorsers in blank before delivery. These provisions are: "2. If the instrument is a note or unaccepted bill payable to the order of the maker or drawer or is payable to bearer he is liable to all parties subsequent to the maker or drawer. 3. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee." These provisions clearly make indorsers, before delivery of a note payable to the order of the maker, guarantors and cosureties as regarding each other. The provisions of the statute relied upon by appellee must be read in connection with the provisions of section 64, and the case of *Tinker v. Catlin*, 205 Ill. 108, was decided before the Act of 1907 was passed and does not control the statute.

If this was a suit at law by a surety against a cosurety for contribution appellant could only recover a cosurety's aliquot part calculated on the whole number of sureties without reference to the insolvency of the cosureties, while in equity, if one or more are insolvent the loss is apportioned among the solvent ones. *Sloo v. Pool,* 15 Ill. 47; 9 Cyc. 801; *Byers v. Alcorn,* 6 Ill. App. 39. Appellant contends that in the allowance of claims a Probate Court is a court of equity. It was said by Justice Cartwright in *Thomson v. Black,* 200 Ill. 461: "The common law remedies against a party cease at his death, and the statutory remedies against his estate provided by the Administration act must then be pursued, so far as the probate court is concerned. * * * All demands of every nature are to be exhibited to the probate court for adjustment and to be classified and settled. * * * No regular pleadings are required. * * * Claims not due may be allowed, and the proceedings bear no analogy to proceedings conducted according to the course of the common law. It was not intended by the legislature that claims should only be presented in technical legal forms. * * * The proceeding in the presentation and allowance of claims is not according to the common law practice, and there is no mode of preserving the evidence or exceptions or making them a part of the record as in a suit at law. (*Blair v. Sennott,* 134 Ill. 78.) It is not governed by technical rules which apply to a formal suit at law. (*Scheel v. Eidman,* 68 Ill. 193.) In allowance of claims against estates the Probate Court disregards mere matters of form and looks to the substance. (*Wolf v. Beaird,* 123 Ill. 585.) In a matter where equitable relief is required the court will adopt forms of equitable procedure, and in other cases will secure to parties the rights allowed them by law, for the purpose of arriving at an adjustment of the claim." The same principles are announced in *Dixon v. Buell,* 21 Ill. 203; *Chicago Title & Trust Co. v. McGlew,* 193 Ill. 457; *Bliss v. Seaman,* 165 Ill. 422; *Carter*

*v. Pierce,* 114 Ill. App. 589. Although Probate Courts have not general chancery jurisdiction, yet, in probate matters, they have jurisdiction of an equitable character and may adopt the forms of equitable proceedings and grant relief of an equitable nature where justice and equity require such relief. There was no error in the holding of the court on the propositions of law submitted.

No findings of fact were requested by either party except the one as to the insolvency of the three directors, and appellee has not argued the holding of the court on that question. It is not pointed out by either party, wherein it is claimed the court erred in its finding of any facts, except that appellant states that the judgment rendered is for one-sixth of a sum that was paid by him or his beneficiaries on the company's notes. From the court's holding on the propositions of law, and the question of fact submitted, it would appear that it rendered judgment for a third of the amount it found had been paid by the guarantors or sureties on the company's notes. The court apparently held that the $2,500 which was negotiated after Cunningham's death, the $27,500 paid from company notes negotiated after Cunningham's death, and the forty-three notes included in the stipulation, the principal of which amounted to $150,718.23, the total amounting to $180,718.23, without interest, were not paid by the beneficiaries as guarantors or sureties, although a large part of these notes was paid from money procured on their credit, since the assets of the company at the date of Cunningham's death only amounted to $113,500; this would leave notes of the company amounting to $137,600, not including interest thereon, substantially all of which the court found were paid by the appellant or his beneficiaries, as indorsers, and for one-third of which with legal interest the court rendered judgment.

Neither party has pointed out any particular company's notes that they claim were erroneously included

by the court as amongst those paid by the guarantors nor any which were improperly excluded therefrom. The arguments deal in generalities and classes of notes and are devoted in the main to the principles of law involved in the case, and the court properly held on every proposition as requested by appellant. We cannot say that the judgment is not sustained by or is against the manifest weight of the evidence, or that it is not for all that claimant is entitled to recover, and it is therefore affirmed.

*Affirmed.*