In re Estate of John T. Cunningham, Deceased. Allan D. Cunningham, Executor, etc., et al., Appellants, v. Reconstruction Finance Corporation, etc., Appellee.

Gen. No. 42,905.

Opinion filed November 6, 1944. Released for publication November 24, 1944.

DEFREES, FISKE, O'BRIEN & THOMSON, of Chicago, for certain appellant.

H. E. CHRISTENSEN, of Chicago, for certain other appellant; VINCENT O'BRIEN and JOHN MERRILL BAKER, both of Chicago, of counsel.

FRANK MICHELS, LEE WALKER and R. A. BULLINGER, all of Chicago, for appellee; FRANK MICHELS, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

The Probate court of Cook county allowed the claim of Reconstruction Finance Corporation against the Estate of John T. Cunningham, Deceased, in the sum of $356,655.48. The claim was based upon a judgment by confession entered in the Circuit court of Cook county on February 7, 1933, against John T. Cunningham and others in favor of Central Republic Trust Company in the sum of $245,811.25, upon a joint and several promissory note payable to National Bank of the Republic, signed by Peter L. Evans, Harold C. Strotz, John A. O'Keefe, Fred W. Georgs, Robert A. Schiewe, Byron C. Thorpe, Nelson K. Reese, John T. Cunningham, Henry A. Sellen, Henry D. Cheney and Otto C. Braese, the latter since deceased. The note was assigned by the payee to Chicago Trust Company, a banking corporation, and assigned by that company to Central Republic Bank and Trust Company, a banking corporation, the name of which was later changed to Central Republic Trust Company. That company pledged the note with Reconstruction Finance Corporation, a corporation organized and existing under the laws of the United States. Central Republic Trust Company was the plaintiff in the original action but later Reconstruction Finance Corporation was substituted as beneficial plaintiff. In that action the motion of

all of the defendants to open the judgment by confession and permit them to defend upon the merits, the judgment to stand as security, was allowed. After certain pleas had been filed by defendants there was a trial before the court and a jury and at the conclusion of the evidence, upon their motion, a verdict for defendants was directed. Plaintiff appealed from the judgment entered upon the verdict. Upon appeal to this court the judgment setting aside the judgment by confession was reversed and the judgment by confession confirmed. (See *Central Republic Trust Co. for use of Reconstruction Finance Corp. v. Evans,* 307 Ill. App. 605.) Upon appeal to the Supreme court the judgment entered by this court was affirmed. (See *Central Republic Trust Co. v. Evans,* 378 Ill. 58.) A complete statement of the pleadings and facts will be found in our opinion.

On pages 637 and 638 of our opinion will be found a statement as to the eleven makers of the note and their important business connections, and from the facts stated therein one would assume that after the Supreme court had affirmed the judgment of this court Reconstruction Finance Corporation would have no trouble in obtaining a satisfaction of the judgment, but that corporation, after the said affirmance, found itself confronted with a serious situation when it undertook to obtain satisfaction of its judgment. On July 3, 1936, Nelson K. Reese, one of the makers of the note, filed a voluntary petition to be adjudged a bankrupt, in the District Court of the United States for the Northern District of Illinois, and in his schedule he listed the claim of the Reconstruction Finance Corporation based upon the note and judgment in question. That corporation filed its claim in the bankruptcy proceedings but, apparently, there were no assets with which to pay any dividend to creditors. Reese received his discharge in bankruptcy and later obtained a perpetual stay of execution upon the judgment in

question as to him. Robert A. Schiewe, one of the makers of the note, died in 1936 and letters of administration were issued upon his estate. The inventory filed showed less than $300 in the estate and that it was insolvent. The estate was closed; the creditors received nothing. In the District Court of the United States for the Southern District of California, on October 22, 1940, Harold C. Strotz, one of the makers of the note, was adjudged a bankrupt on a petition filed by him. In the schedule filed he stated that the total of his indebtedness was $2,127,641.86 and that his total assets amounted to $525. Reconstruction Finance Corporation filed its claim in that proceeding, but the creditors received nothing. It would unduly lengthen this opinion to state the facts surrounding the claimed insolvency of other makers of the note. Suffice it to say that appellants, in their reply brief, concede the insolvency of all of the surviving makers of the note. Appellee's contention that it is strange, indeed, that all of the eight surviving makers of the note should have become insolvent ordinarily would have force, but in the instant case it must be remembered that in the original proceeding all of the defendants plead that the note for $210,000 could not be enforced against them because it was executed, and the money was obtained thereon, in furtherance of a criminal conspiracy, and, in view of the nature of that plea, it is neither strange nor surprising that they would take steps to evade the payment of the judgment. Reconstruction Finance Corporation finally discovered that the only way in which it could obtain satisfaction of the judgment was to file its claim against the estate of John T. Cunningham. The opinion of this court (307 Ill. App. 605) was filed December 30, 1940, and while a petition for a rehearing was pending Cunningham died, on January 10, 1941, and on January 17, 1941, letters testamentary were issued in his estate to Allan D. Cunningham by the Probate court of Cook county, and the executor, on

January 17, 1941, filed a motion in this court asking that "he, the said Allan D. Cunningham, as Executor under the Last Will and Testament of John T. Cunningham, deceased, be substituted as a defendant in this cause in the place and stead of John T. Cunningham, deceased," which motion was granted on January 21, 1941. After the Supreme court had granted the defendants an appeal from the judgment of this court, one of the counsel for the executor of the Cunningham estate filed an affidavit in the Supreme court in which he stated that the estate of Cunningham in all probability may be sufficient to pay the judgment if the same is affirmed by the Supreme court, but that the satisfaction of such judgment may result in the insolvency of the estate of Cunningham and that none of the other defendants, individually or collectively, are financially able to satisfy this judgment.

The claim of Reconstruction Finance Corporation against the estate of John T. Cunningham was allowed by the Probate court on January 20, 1942. On February 4, 1942, the executor of the estate filed a motion in that court to vacate the order of January 20, 1942, and in the motion he states: "That he is informed by his said counsel that prior to, as well as after, the allowance of said claim *they were daily searching the law for a valid defense to the allowance of said claim* and that he is informed by his said counsel that as the judgment which is the basis of the claim of the Reconstruction Finance Corporation is a joint judgment and not a joint and several judgment the liability thereon as against the estate of John T. Cunningham ceased at his death and that his estate is not liable for said claim or any part thereof." In support of the motion one of the attorneys for appellants filed an affidavit, in which he states: "That ever since the decision of the Supreme Court of Illinois, he, together with other members of the firm of Defrees, Buckingham, Fiske & O'Brien, has given a great deal of consideration and

study to the question of whether or not there is a defense to the allowance of a claim against the estate of said John T. Cunningham based on said judgment. That affiant and other members of said firm are of the opinion that, as the said judgment is a joint judgment and not a joint and several judgment, the said claim cannot be allowed against the estate of John T. Cunningham but that only the surviving judgment debtors are liable for the satisfaction thereof.'' The Probate court denied this motion and the executor and Margaret Cunningham Amberg, one of the legatees of the estate, appealed to the Circuit court, where, in a hearing *de novo,* the claim was allowed as a seventh class claim to be paid in due course of administration, in the amount of $372,157.40. Appellants appeal from that order.

The executor and the legatee contend:

''1. That the holder of a joint and several note has an election to enforce either the several or the joint liability, and that an election to enforce the joint liability is irrevocably made by taking one judgment against all of the makers in one proceeding, and that thereby the several liability of the makers is extinguished.

''2. That the rule at common law was, and still is, that the death of one of several joint obligors extinguishes the debt against his personal estate and leaves only the surviving obligors liable.

''3. That the provisions of Section 3, Chapter 76 of the Illinois Revised Statutes [Jones Ill. Stats. Ann. 70.04] to the effect that 'except as otherwise provided in this Act, all joint obligations and covenants shall be taken and held to be joint and several obligations and covenants,' are not applicable to a joint judgment.

''4. That equity will relieve against the operation of the common law rule only when and if the obligee avers and proves (a) that all remedies against the surviving joint obligor have been exhausted, and (b) that the deceased joint obligor actually received the real

consideration for which the obligation was given and was not acting merely as an accommodation party or as a surety.

"5. That the Claimant, Reconstruction Finance Corporation, failed to prove those two conditions precedent to recovery in equity.

"6. That the decision of the Supreme Court above mentioned did not adjudicate anything more than that the note on which judgment was confessed was supported by legal consideration, and thus that its decision is not *res judicata* on the question of who received the actual consideration *in the equitable sense*—a question which now arises for the first time.

"7. That, accordingly, the trial court erred in rejecting the offer of proof made by the Executor *to further support his contention that Cunningham was an accommodation party or a surety.*" (Italics ours.)

As to points 4 and 5 in the foregoing, appellants, in their reply brief and upon oral argument, concede that all remedies against the surviving obligors were exhausted.

Reconstruction Finance Corporation relies upon the following propositions to sustain the instant judgment:

"1. The proceeding in the presentation and allowance of claims against an estate is not governed by the rules of common law. The Probate Court exercises equitable powers in the adjustment of a claim. Where a claim is presented to the Probate Court based upon a judgment, the Court under its equitable powers will look behind the judgment to the obligation upon which it is based and if such obligation was joint and several will allow the claim.

"2. In Illinois a judgment against several upon a joint and several obligation is joint and several.

"3. A judgment is an obligation within the meaning of Section 3, Chapter 76 of the Illinois Statutes making all obligations joint and several.

"4. Upon the death of John T. Cunningham, his Executor was upon his motion substituted in the Appellate Court as a defendant in the original case and therefore the judgment is in fact against 'Allan D. Cunningham, Executor of the Estate of John T. Cunningham, Deceased.'

"5. The rule that the death of one of several joint obligors discharges his estate from liability applies only to the case where the deceased joint obligor was a mere surety, receiving no benefit from the obligation. It appears from the facts found by the Appellate Court (307 Ill. App. 605) and the Supreme Court (378 Ill. 58) that Cunningham was not a 'mere surety'; that the note in question was the primary obligation of all the defendants and that Cunningham and the other defendants received real consideration for the execution and delivery of the note.

"6. The Estate was estopped from asserting that Cunningham did not receive real consideration by the doctrines of 'estoppel by verdict' and '*res adjudicata.*'

"7. It appears from the record (a) that there was an exhaustion of remedies against the surviving obligors; (b) the Cunningham Estate having admitted the insolvency of the surviving obligors it would be unnecessary even under the Estate's theory to show exhaustion of remedies.

"8. The Cunningham Estate is estopped by its conduct from denying its liability upon the judgment or from asserting that the claim of the RFC is contingent.

"9. The ruling of the Court upon the Estate's offer of proof was correct."

Upon the hearing of the instant case in the Circuit court, on motion of the appellee, there were admitted in evidence, without objection by appellants, all of the pleadings in the original suit, consisting of the narr. and cognovit; the original pleas of defendants; the special additional plea of defendant Cunningham, which plea was adopted by all of the other defendants;

the special similiters and replications of the plaintiff to the defendants' pleas; the judgment of this court entered December 30, 1940, in case No. 39,121; the order entered by the Circuit court in the original suit pursuant to the mandate of this court; the opinion of this court, reported in 307 Ill. App. 605; the opinion of the Supreme court, reported in 378 Ill. 58, and the mandate of the Supreme court.

In our view of this appeal it is not necessary to decide a number of points argued at length by the able counsel for both sides.

In *Trego v. Estate of Cunningham,* 267 Ill. 367, 374, the court said: "To avoid the delay, expense and embarrassment in the settlement of estates by requiring a resort, in the first place, to a court of equity, it will proceed in a case of an equitable character as though a bill in chancery has been filed, and will hear the evidence, investigate the claim and apply equitable rules in determining the judgment. (*Moore v. Rogers,* 19 Ill. 347; *Dixon v. Buell,* 21 id. 203; *Heward v. Slagle,* 52 id. 336; *Wadsworth v. Connell,* 104 id. 369; *Thomson v. Black,* 200 id. 465.) In such a case the court will act substantially as a court of equity, disregarding mere matters of form and looking to the substance to determine the equities of the parties." As stated by Mr. Presiding Justice Wilson in *In re Estate of Kinsey,* 261 Ill. App. 481, 487, 488: "Numerous decisions of this State have recognized the rule that probate courts have equitable jurisdiction in matters pertaining to the administration of estates. *Wadsworth v. Connell,* 104 Ill. 369; *Shepard v. Speer,* 140 Ill. 238; *In re Estate of Mertz,* 246 Ill. App. 283; *Trego v. Estate of Cunningham,* 267 Ill. 367." In *Harris v. Harris,* 116 Ill. App. 537, the court said (p. 538):

"Counsel for appellant contends that, although Harris and appellant may have been jointly and severally liable upon the notes, when the same were merged in joint judgments their liability became joint only;

that Harris having died, no action could be had against his estate upon such judgments; that it was therefore the duty of appellee to have interposed a defense to the claim in the County Court, and that had she done so the claim could not have been legally allowed. Waiving the question as to whether when a joint judgment is obtained against both principal and surety, and the surety dies, the estate of the surety is released, we are of opinion that the judgment of the Circuit Court should be affirmed. By virtue of section 3, chapter 27 [76], of the statutes, appellant and Harris were jointly and severally liable upon the original undertaking. *Notwithstanding the notes were merged in the judgments so as to bar further actions at law upon the same, the County Court, in the exercise of its equitable powers in passing upon claims against estates, had a right to look beyond the judgments to the original undertaking, and allow the claim as an equitable money demand. People v. Harrison, 82 Ill. 84; Trust Co. v. McGlew, 193 Ill. 457; Wolf v. Beaird, 123 Ill. 585; Matthews v. Kerfoot, 167 Ill. 313; Thomson v. Barker, 102 App. 304, and cases cited; Carter v. Pierce, 114 Ill. App. 589.''* (Italics ours.)

Appellants state that the Probate court in the exercise of its equitable powers had the right to look into the circumstances surrounding the making of the note for the purpose of determining whether Cunningham received the real consideration for the note or was merely an accommodation maker. The nature of the defense to the claim requires the appellants to take that position.

For the purposes of this appeal we will assume that the Probate court, in the exercise of its equitable powers, in passing upon the instant claim had a right to look beyond the judgment to the original undertaking and to pass upon the claim from the equitable standpoint and that in passing upon the claim the court was bound to consider the questions raised and

determined by this court and the Supreme court in the original suit.

In the original suit the two questions raised and passed upon by this court and the Supreme court were, (a) the question of consideration set up in defendants' fourth plea, and (b) the defense set up in defendant Cunningham's special additional plea to the effect that the note cannot be enforced against Cunningham or the other makers of the note because the note was executed by the defendants and the money was obtained from the bank in furtherance of an illegal conspiracy to carry out a contract that violated the public policy of the United States and the State of Illinois. The able counsel who represented the defendants in the original suit in this court, in their brief, stated their principal defense to the note in the following language: ''The note sued on was given in pursuance of an unlawful conspiracy to engage in branch banking in violation of Section 9 of the Illinois Banking Act [Ill. Rev. Stat. 1943, ch. 16½, par. 9; Jones Ill. Stats. Ann. 10.09] and of Section 5155 of the Federal Banking Act and a cause of action cannot be maintained thereon. The note sued upon was given in pursuance of an unlawful conspiracy to violate the public policy of Illinois, and is, therefore, uncollectible.'' The special additional plea filed in the original proceeding by Cunningham, and adopted by the other defendants, alleges that all of the defendants were parties to the conspiracy. As to point (a), we specifically held (p. 643) that there was no merit in defendants' contention that there was no valid consideration for the note and therefore no liability upon the note. As to Cunningham's special plea we held (pp. 641, 642, 643):

''. . . In the instant case Woodruff was utterly without power to bind the bank by the alleged promises made by him to defendants and which the latter claim were made in furtherance of the alleged conspiracy. The said promises, so far as the bank was con-

cerned, would be clearly against public policy and void (see *Knass* case, *supra*) [*Knass v. Madison and Kedzie Bank,* 354 Ill. 554]. There is nothing in the record to show that the board of directors authorized Woodruff to make the alleged promises. But even a resolution of the board of directors authorizing the promises could not bind the bank. Defendants, experienced bankers, knew, or should have known, that the alleged promises of Woodruff were, as to the bank, void, and could not absolve them from the payment of the note. The note is a valid instrument upon its face and its validity is not changed by the void promises of Woodruff. The defense interposed, assuming it to be based upon facts, *is entirely devoid of equity,* and it would be a serious reflection upon the administration of justice if the participants in an illegal conspiracy could, in furtherance of said conspiracy, obtain $210,000 of the funds of the bank by means of a note, valid upon its face, which funds were used for the purpose of bolstering the financial condition of Madison Square State Bank, which defendants controlled, and be absolved from the payment of the note. To adopt defendants' position would be to penalize the innocent stockholders, depositors, and creditors of the bank, in order to protect the guilty participants in the alleged illegal scheme. If defendants' theory of law is sound, then Woodruff had the power to dissipate the entire cash assets of the bank by means of conspiracies akin to the one alleged by defendants, and the bank would have no redress against the guilty conspirators. In this connection it must be noted that in furtherance of the alleged conspiracy of Woodruff and defendants the latter placed in the bank an instrument purporting on its face to be a promissory note, which they knew would be held out to the national bank examiners to be an ordinary promissory note and an asset of the bank. Defendants, at the time of the execution of the note, also delivered to the bank statements of their financial

condition, which they well knew would be considered by the examiners in determining the value of the note as an asset of the bank. That the rule defendants seek to have sanctioned would work against the 'well being' of the bank, as defined in the *Knass* case, is obvious. How long would banks retain the confidence of the public if defendants' contention as to what constitutes the public policy of the State were sustained?

"The fact that The National Bank of The Republic was a federal bank in no way changes the situation, as the Supreme Court of the United States has held that the policy of the National Banking Act is to promote the security and strength of the national banking system." (Italics ours.)

The Supreme court, in its opinion, after citing the facts bearing upon the fourth plea and the law in reference thereto, held that there was a valid consideration for the note; that (p. 68) "There was no evidence in the record to sustain the contention that the National Bank of the Republic was the accommodated party under the fourth plea, nor that there was a lack of consideration for the note in controversy." That court also held, in plain and unmistakable language, that there was no merit in the additional plea filed by Cunningham and adopted by the other defendants; that it would be against public policy to sustain such a plea; that the defendants were involved in the conspiracy, and that under the circumstances of the case the law would not permit the creditors of the bank to be injured.

That we held that the defense interposed was entirely devoid of equity seems to be conceded by the appellants, for their contention is that the Supreme court did not pass "on the question of who received the actual consideration *in the equitable sense*—a question which now arises for the first time. That, accordingly, the trial court erred in rejecting the offer of proof made by the Executor *to further support his conten-*

*tion that Cunningham was an accommodation party or a surety."* Aside from the fact that the points raised by the defendants in the original suit were passed upon by this court and by the Supreme court, the argument of appellants that if the question as to who received the actual consideration for the note *"in the equitable sense"* be now considered, they would prevail in the instant proceedings, does not appeal to our sense of justice. As we stated in our opinion (307 Ill. App. at page 642): "The defense interposed . . . is entirely devoid of equity." Cunningham *verified* the special additional plea and stated therein all of the facts and circumstances surrounding the making of the note and what occurred after the money was obtained, and the facts set up in that plea and the facts in evidence in the original case show that all of the defendants, in furtherance of the criminal conspiracy, executed the note in question and thereby $210,000 of the funds of the bank were obtained, *and that the money so obtained was used in furtherance of the conspiracy.* Even if it be assumed as a fact that Cunningham did not personally receive any part of the money thus obtained and did not personally handle any of it, such fact would avail appellants nothing. The act of one conspirator done in furtherance of the conspiracy is the act of all of the conspirators. To repeat what we have heretofore stated: We held, and the Supreme court held, that public policy would not permit the bank or its creditors to be injured under the facts of that case. We feel impelled to state that in view of the facts and the record in this case it is not surprising that the able attorneys for appellants daily searched the law for a long time in an effort to find a defense to the claim. It would be, in our considered judgment, a serious reflection upon the administration of justice if the defense interposed in the present proceeding were to prevail.

As to the contention of appellants that the trial court erred in rejecting the offer of proof made by the executor to further support his contention that Cunningham was an accommodation party, or a surety: Counsel for the appellants, in making the offer, said: "In short, the net of the offer is that the makers of this note were accommodation makers who for the purposes of this type of proceeding did not receive and cannot be considered to have received the proceeds or the real consideration which was designed to go and which in fact did go to the benefit of the Madison Square State Bank which under the provisions of the negotiable instruments act and again in contemplation of equity here was the accommodated party." The evidence offered pertained to matters that were raised by Cunningham in the special additional plea and that were passed upon by this court and the Supreme court and adversely to the appellants. That plea states at great length all of the facts upon which Cunningham based his defense to the suit upon the note. The statement made by the attorney for the estate at the time the offer was made, and the offer itself, show that the appellants were seeking to relitigate issues that were determined in the original case.

Reconstruction Finance Corporation, in support of its contention that the judgment should be sustained, has advanced a number of points that we do not deem it necessary to pass upon in deciding this appeal. The said corporation has heretofore filed a motion in this court to affirm the judgment of the Circuit court and to allow to it statutory damages upon the ground that the instant appeal was taken merely for delay. The motion is denied.

The judgment of the Circuit court of Cook county should be and it is affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.